**Janell KJOS, f/k/a Janell Brandenburger, Plaintiff and Appellee,**

v.

**Bryan R. BRANDENBURGER, Defendant and Appellant.**

**Civil No. 950329.**

Supreme Court of North Dakota.

June 27, 1996.

Alisha Ankers of Johnson Law Office, Fargo, for plaintiff and appellee. Appearance by Janell Kjos.

L. Patrick O'Day, Jr., Fargo, for defendant and appellant. Appearance by Bryan Brandenburger.

NEUMANN, Justice.

Bryan R. Brandenburger has appealed from a district court order affirming a referee's findings of fact and conclusions of law finding him underemployed, imputing income to him, ordering him to pay Janell Kjos for medical expenses and child support, and setting a visitation schedule. We reverse and remand.

The parties were divorced in 1990. The divorce decree awarded the physical care and custody of the parties' two minor children to Kjos, prescribed visitation arrangements, required Brandenburger to pay child support of $75 per month per child, and required him to pay one-half of the children's medical, dental, orthodontic, and optometric expenses not paid by insurance.

In 1994, Kjos filed a motion requesting Brandenburger be held in contempt for not paying child support, and sought a modification of child support, a judgment for Brandenburger's unpaid share of the children's health care expenses, and more specific visitation provisions. The referee issued findings of fact and conclusions of law on July 18, 1995. The referee found Brandenburger to be underemployed and imputed income to him. The referee concluded Brandenburger should pay $657.48 for his unpaid share of the children's medical expenses, child support of $328 per month, and $64 per month toward the child support arrearage. The referee also fixed a visitation schedule. Brandenburger requested district court review of the referee's findings and conclusions. The district court affirmed the referee's findings and conclusions and Brandenburger appealed.

Brandenburger contends the referee's finding of underemployment is clearly erroneous, and that the income imputed to him was a misapplication of the child support guidelines. "A finding of fact is clearly erro-

neous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Klose v. Klose*, 524 N.W.2d 94, 96 (N.D.1994).

There was very little evidence directed to the issue of Brandenburger's underemployment. Brandenburger testified on cross-examination:

"Q. All right, what do you do for a living.

"A. I am a farmer.

"Q. All right, you do anything else.

"A. I do some carpentry work in the off season.

    \*    \*    \*    \*    \*    \*

"Q. Do you do carpentry work.

"A. Only if I have time.

"Q. Would you say that during the winter you have time.

"A. Not always, but generally I do.

"Q. When do you do the most carpentry work.

"A. Oh, probably from November to March, I am just guessing.

    \*    \*    \*    \*    \*    \*

"Q. Now when you say carpentry you mean cabinets or building construction. Do you do both.

"A. I do cabinets mainly.

    \*    \*    \*    \*    \*    \*

"Q. How many jobs would you say that you do per year.

    \*    \*    \*    \*    \*    \*

"A. Probably six.

    \*    \*    \*    \*    \*    \*

"Q. How much do you charge for those jobs.

"A. Most of my work is done on bid type.

"Q. How do you establish what a reasonable bid is for a job.

"A. What it takes for my labor, plus materials.

    \*    \*    \*    \*    \*    \*

"Q. All right, okay. When you prepare your bids then when you are calculating um, how much time it will take, do you have an hourly rate that you figure in for your time.

"A. Depending upon the job, yes.

"Q. What is that figure that you use.

"A. If its an easy job its probably around five.

"Q. And if its a more skilled job.

"A. I would not say skilled job, I would say more like if its a hard backbreaking job the labor increases to up to ten."

Kjos testified:

"Q. Do you know for a fact if there is um, readily, his job is readily available in the carpentry industry for him in Fargo.

"A. Yes, I have spoken with the head of the F–M Builders Association."

From that relatively insubstantial subjective evidence of Brandenburger's carpentry experience, the referee found Brandenburger underemployed and imputed income to him of $401 per month:

## "VIII.

"Defendant testified that he is free to do cabinet and carpentry work during the months from November through March or approximately 22 weeks per year. He further testified that he earns from $5.00 to $10.00 per hour for such work depending on its complexity.

## "IX.

"The Court finds that if Defendant worked full-time at [cabinet and carpentry work] for those 22 weeks per year, he would have gross income from that source of $6,600.00. Subtracting $580.00, his actual yearly average, from $6,600.00 results in an imputed yearly average for a five year period of $6,020.00. Assuming a 20 *percent deduction for various federal taxes, that imputed sum is reduced to* $4,816.00 or $401.00 per month.

    \*    \*    \*    \*    \*    \*

"XI.

"The Court finds Defendant is underemployed based upon his testimony that he could work full-time for 22 weeks per year earning $5.00 to $10.00 per hour. This is in addition to his farming operation."

Evidence that Brandenburger does carpentry work—"[p]robably six" jobs per year—when he has time "in the off season" and does most of his carpentry work between November and March on bids by which he tries to get $5 to $10 per hour for his labor, depending on the difficulty of the work involved, does not support a finding of underemployment when there was no evidence of how much work was available. Nor does the evidence support the imputation of income of $401.00 per month to Brandenburger. There is no evidence in the record that there was cabinet and carpentry work available to Brandenburger in his community to provide him with 22 weeks of full-time work for forty hours a week at an average of $7.50 per hour. The findings of underemployment and imputed income are not supported by the evidence and are clearly erroneous.

Furthermore, the finding of underemployment reflects an erroneous view of the law. North Dakota Administrative Code § 75–02–04.1–07 authorizes imputing income to an underemployed child support obligor, based on the obligor's earning capacity. *Surerus v. Matuska,* 548 N.W.2d 384 (N.D.1996); *Nelson v. Nelson,* 547 N.W.2d 741 (N.D.1996). In a case in which the evidence of underemployment is much more compelling than in this case, evidence of a child support obligor's personal work and earnings situation may not be irrelevant in determining if the obligor is underemployed, and what income should be imputed to him or her. However, the child support guidelines present an objective standard—"prevailing amounts earned in the community by persons with similar work history and occupational qualifications"—against which to measure the obligor's "gross income from earnings":

"An obligor is 'underemployed' if the obligor's gross income from earnings is significantly less than prevailing amounts earned in the community by persons with similar

work history and occupational qualifications."

N.D.A.C. § 75–02–04.1–07(1)(b). An obligor's "community" includes any place within 100 miles of the obligor's residence. N.D.A.C. § 75–02–04.1–07(1)(a). There is a presumption of underemployment "if the obligor's gross income from earnings is less than six-tenths of prevailing amounts earned in the community by persons with similar work history and occupational qualifications." N.D.A.C. § 75–02–04.1–07(2).

If an obligor is found to be underemployed, § 75–02–04.1–07(3), N.D.A.C., describes how the amount of income to be imputed to an underemployed obligor is to be determined:

"Except as provided in subsections 4 and 5, monthly gross income based on earning capacity equal to the greatest of subdivisions a through c, less actual gross earnings, must be imputed to an obligor who is unemployed or underemployed.

"a.  An amount equal to one hundred sixty-seven times the hourly federal minimum wage.

"b.  An amount equal to six-tenths of prevailing gross monthly earnings in the community of persons with similar work history and occupational qualifications.

"c.  An amount equal to ninety percent of the obligor's greatest average gross monthly earnings, in any twelve months beginning or on after thirty-six months before commencement of the proceeding before the court, for which reliable evidence is provided."

Section 75–02–04.1–07(1)(b), N.D.A.C., requires that Brandenburger's income from earnings be compared to "prevailing amounts earned in the community" by other persons with "similar work history and occupational qualifications" to determine if he is underemployed. *Nelson. See Matuska.* No such evidence was introduced, though such evidence is available. Job Service North Dakota, for example, has published wage and benefit surveys for a number of cities within 100 miles of Brandenburger's home. Such surveys would provide evidence of "prevailing amounts earned in the community" by persons with work histories and occupational

qualifications similar to Brandenburger's, as well as some evidence of work availability. *See also* Blaine L. Nordwall, *Summary of Comments Received in Regard to Proposed Amendments to N.D. Admin. Code Ch. 75–02–04.1 Child Support Guidelines* at 18 (1994): "Job Service North Dakota maintains and publishes information, in the North Dakota Labor Market Advisor, which would provide a reliable judicially noticeable (under Rule 201, N.D.R.Ev.) basis" for determining "prevailing amounts earned in the community by persons with similar work history and occupational qualifications." There was no evidence introduced to support a finding of underemployment under § 75–02–04.1–07(1)(b), N.D.A.C., and the referee did not impute income to Brandenburger in accordance with § 75–02–04.1–07(3), N.D.A.C. The referee erred in failing to follow the guidelines. We conclude the findings of underemployment and the amount of income imputed to Brandenburger are, therefore, clearly erroneous. *See Heley v. Heley,* 506 N.W.2d 715 (N.D.1993).

Because the findings of underemployment and imputed income are clearly erroneous, we must reverse and remand for entry of judgment or further proceedings in accordance with this opinion. We need not address Brandenburger's contention that he is unable to pay the amount of child support ordered. The referee found Brandenburger receives in-kind income, but did not value it. If further proceedings are conducted and there is evidence of the value of in-kind income received by Brandenburger, the child support guidelines require that it be valued and included in Brandenburger's income for computing the appropriate child support obligation. N.D.A.C. §§ 75–02–04.1–01 and 75–02–04.1–02.

Kjos contends she should be awarded costs and attorney fees under Rules 13 and 39, N.D.R.App.P. In light of our reversal, the request is denied.

The order is reversed and the matter is remanded for entry of judgment or further proceedings in accordance with this opinion.

VANDE WALLE, C.J., and SANDSTROM and MESCHKE, JJ., concur.

The Honorable MARY MUEHLEN MARING was not a member of the Court when this case was heard and did not participate in this decision.