1998 ND 74

**Derek W. BERG, Plaintiff and Appellee,**

v.

**Misty ULLMAN, ex rel. Peter M. ULLMAN Defendant and Appellant.**

**Civil No. 970309.**

Supreme Court of North Dakota.

April 8, 1998.

Craig M. Richie of Richie & Associates, Fargo, for defendant and appellant.

Maureen Holman of Serklund, Lundberg, Erickson, Marcil & McLean, Ltd., Fargo, for plaintiff and appellee.

MESCHKE, Justice.

[¶ 1] Misty Ullman appealed an order denying her motion to increase Derek Berg's support for their child, Peter Michael. We affirm in part, reverse in part, and remand for complete development of Derek's income and for correct application of the law imputing income to an underemployed parent.

[¶ 2] Peter was born December 2, 1994, to Misty and Derek while they were unmarried high school students. The director of social services sued for Peter in April 1995 to establish Derek's paternity and his support duty. A judgment was entered March 20, 1996, declaring Derek to be Peter's natural father and ordering Derek to pay monthly child support. Because Derek was still in high school and newly employed part-time at minimum wage at a pizza franchise, Derek's support obligation was set at $50 monthly,

and Derek was required to pay $10 monthly on a $485 arrearage for the ten months from April 1995 through January 1996. Apparently anticipating Derek's full-time employment after his high school graduation in May 1996, the judgment directed re-assessment of Derek's "ongoing child support obligation in light of any material change in [his] ability to pay . . . ."

[¶ 3] After a June hearing, a judicial referee found "a material change in [Derek's] circumstances . . . based upon the fact that [he] has now graduated from high school;" Derek resides with his parents and pays $50 per month in rent; and he "suffers from no disabilities and is able to earn a full-time, minimum wage income of at least . . . ($625.00) per month in take-home pay." Despite the direction in N.D.Admin.C. 75–02–04.1–02(10) that "[e]ach child support order must include a statement of . . . how that net income was determined," the referee's order did not show how Derek's monthly net income was found to be $625. However, neither side sought review and the order became final. From his $625 monthly income, the referee ordered Derek to pay $102 child support.

[¶ 4] On February 25, 1997, Derek sued to clarify and enforce his "right of reasonable visitation" in the paternity judgment. On May 19, 1997, while settlement of visitation was pending, Misty moved "for an increase in [Derek's] child support obligation on the grounds that he is underemployed." Her affidavit alleged Derek "is grossly underemployed" because she had "reason to believe from North Dakota Job Service that the average pizza delivery person makes significantly more money than [Derek] is making at this time."

[¶ 5] Derek's affidavit disputed "that pizza delivery persons in Fargo earn more than minimum wage." To evidence his earnings, Derek attached a single two-week pay stub showing gross year-to-date wages through June 29, 1997 of $4,125.42. Derek insisted he "cannot afford to pay any additional amount in child support at this time" because "my regular monthly expenses already exceed my income." At "an average of $317 per pay period" for 13 two-week pay periods

until then, Derek "anticipated annual income of $8,250," less taxes of $880, for a net annual income of $7,370. Dividing that by 12 for a net monthly income of $614, Derek said he was earning "only slightly less than the amount imputed to me in the last order."

[¶ 6] At an August 1997 hearing, Derek testified he was age twenty, had finished high school in 1996, and had worked as a delivery driver and a pizza maker for "pretty close to two years." He had not "looked for other employment" "[b]ecause I believe it's a good enough job." He agreed he had not been working full time, but he said, "I'm doing pretty close to full time." He had not "looked for any jobs where you could find employment full time" "because I'll be starting school this fall." He agreed "there would have been nothing keeping [him] from getting a full-time job" if he began school at Northwest Technical College, but he felt it "would be very hard." He admitted applying for college after Misty moved to increase support.

[¶ 7] Derek testified to purchasing a 1990 Chrysler LeBaron Convertible in June 1997, and to obligating himself for $118 a month for two years "to fix up my car." He said he had no other source of income besides his wages and tips. His last pay stub showed $38.75 in tips for that two-week period, he agreed, but when asked "how much do you normally make in each pay period for tips," he had "no idea."

[¶ 8] Misty's counsel argued for more income to be imputed to Derek than what he was earning:

This man is making—has chosen by his own admission to work part time. He has not looked for other jobs. . . . He's worked less than 40 hours a week. He thinks it's a pretty good job. He's making—he's paying I think $108 a month for the support of his child. He's had money for buying another car. He's had money obviously to do what he wishes to do, live in an apartment, live away from home. He now says he's going to go back to school. . . . [H]e never thought about doing that until after these motions were made.

... A high school graduate can do more than work part time delivering or making pizzas.

... the statute makes it very difficult to prove but under the Wage and Benefit Survey, which is attached to this, it states and it shows what an average of a person would make making pizzas—I'm sorry, being a delivery person if he can deliver pizzas, which I don't think he's being totally forthright in what he makes in tips. I think he probably does a lot better than that in his tips, and that's up to the Court to decide. If he—an average high of what ... he'd be making 77 percent of what he would be making in—by way of what other delivery people make. Making four seventy-five when he could make five twenty-two and six seventeen even at the minimum and that's not being—that's not asking for a lot for him to do that.

[¶ 9] Derek's counsel argued, like she did in this court, Derek was earning "close to" minimum wage so no more should be imputed. For example:

The guidelines set forth when you impute income and they decide it, that I think if you impute income at the federal minimum wage $102 a month is all you can expect in child support.

...

The guidelines require that people earning significantly less in order to impute income. There's no testimony here that he is earning significantly less.

Unfortunately, the court blindly accepted this argument:

... we're already making him a 40–hour–a–week pizza delivery guy at minimum wage so I think it's a misstatement of the facts to talk about him in a part-time capacity when it's my understanding that the child support that's been imputed to him is based on a 40–hour week minimum wage, right?

Haltingly, Misty's counsel tried to argue otherwise:

... So giving him the benefit of the doubt, he's still choosing to work part time at a minimum wage job, and he has for over two years, instead of trying to find something else.

... when he came in the last time and playing, quote unquote, the game with the Court he was working only working part time. They then argued at that juncture he hasn't had the money because he's only working part time.

[¶ 10] But, mainly, Misty's counsel argued Derek had abilities to earn more:

... My position is this: He is underemployed. He has the ability to do a heck of a lot better than to be pizza delivery guy for two years, whether it be part time or almost full time, and if the Court awarded to his abilities, which this statute is intended for, he would then be in a position where I think you would find that he would able to go and do delivery work. And if it's delivery work delivering pianos or delivering furniture, that's what this chart shows. He certainly has that ability. There are other things other than delivering pizzas .... even taking into consideration that his tips may be low and you may not buy that, that he's undoubtedly pocketing more money than what he says, it appears that he could certainly do a lot better. It's been two years he hasn't found a better job.

[¶ 11] The trial court was troubled, but felt it had no way to impute greater earnings to Derek:

... I can't impute skills to him that he doesn't have right now. He's a low skilled laborer and I'm satisfied he can't be very proud of the fact that he only pays $102 a month for child support. That can't be something that he's proud of. And I'm hopeful that that's not something that he wants to continue for very much longer in the future. But I certainly have no basis on which to impute a higher child support amount to him. The Court imputed half of that amount to him while he was in high school. And after he graduated from high school, just about a year ago, and got a job working at Domino's the figure was raised to 102. And, as I mentioned earlier, that's imputing a full 40–hour week to him. Now he could be working two jobs. He doesn't elect to do that. I'm satisfied he could be

making more money, but I don't have the grid available. I don't have the evidence in front of me that would allow me to plug him into something higher than where he's at.

The court held "there is no basis to impute income in addition to the income imputed by the amended judgment," and refused to increase Derek's child support.

[¶ 12] On appeal, Misty contends the trial court erred in deciding Derek "is not underemployed ... when he willfully chooses to work part-time at a minimum wage job that pays significantly less than the community average when he could make significantly more than minimum wage if he worked full-time." She argues:

... According to the Fargo Wage & Benefit Survey of 1996 published by Job Service North Dakota presented as evidence by [Misty] at the trial, the average delivery driver working full-time in Fargo makes more than minimum wage. The average gross wage of a delivery driver in Fargo is $5.82 per hour according to the survey, and thus the average gross monthly salary of a delivery person based on $5.82 per hour in the Fargo area would be $1,008.80.... This is significantly more than what [Derek] is actually making at this time. *Currently, he is making only $4.75 per hour and thus his gross monthly income if he works full-time is $823.33* [sic]. However, he has never worked full-time since his child was born, and even at the time of the trial, he claimed he was trying to work full-time, but even then, he was working less than forty hours. In addition, he works sometimes as a pizza maker and sometimes as a pizza delivery person and therefore makes less in tips than he would if he was working full-time as a delivery person. He could be working full-time either at this job or a different job as a delivery driver, but he has chosen to only deliver part-time.

(our emphasis). Unfortunately, two of the three alternative ways in the guidelines, at

N.D.Admin.C. 75–02–04.1–07(3)(b) and (c), to impute income based on earning capacity are not available on this sparse record.

[¶ 13] "An obligor is 'underemployed' if the obligor's gross income from earnings is significantly less than prevailing amounts earned in the community by persons with similar work history and occupational qualifications." N.D.Admin.C. 75–02–04.1–07(1)(b). When an obligor is underemployed, the guidelines authorize three alternative ways to impute income: [1]

Except as provided in subsections 4 and 5, monthly gross income based on earning capacity *equal to the greatest* of subdivisions a through c, less actual gross earnings, *must be imputed* to an obligor who is unemployed or underemployed.

a. An amount equal to one hundred sixty-seven times the hourly federal minimum wage.

b. An amount equal to six-tenths of prevailing gross monthly earnings in the community of persons with similar work history and occupational qualifications.

c. An amount equal to ninety percent of the obligor's greatest average gross monthly earnings, in any twelve months beginning on or after thirty-six months before commencement of the proceeding before the court, for which reliable evidence is provided.

N.D.Admin.C. 75–02–04.1–07(3)(our emphasis). Because subdivision c clearly does not apply, Misty had the burden to prove Derek's occupational qualifications for more imputed earning capacity under subdivision b. Misty had to prove the amount Derek was earning was less than six-tenths of the prevailing earnings in the community of persons with similar work history and occupational qualifications. She failed to do so.

[¶ 14] Misty concedes Derek's small earnings were more than sixty percent of the prevailing wage she sought. However, she argues the trial court still had judicial discretion to find Derek underemployed. For that

---

1. *Compare* N.D.Admin.C. 75–02–04.1–07(5): Gross income based on earning capacity may not be imputed if the obligor shows that the obligor has average monthly gross earnings equal to or greater than one hundred sixty-seven times the hourly federal minimum wage and is not underemployed.

purpose, Misty offered evidence from the 1996 Fargo Wage and Benefit Survey published by Job Service North Dakota.

[¶ 15] From this evidence, Misty argued Derek should be able to earn the average wage of a "merchandise deliverer" of $5.82 per hour, or even the average high wage of $6.17 per hour for that category. In his affidavit, Derek contested Misty's position that he could earn more as a merchandise delivery person by insisting a pizza delivery person can only make minimum wages. While the wage rates for merchandise delivery are significantly more than Derek's earnings, sixty percent of either of the wages urged by Misty is less than his current earnings.

[¶ 16] We have recognized publications by Job Service North Dakota are relevant evidence that can be judicially noticed to show prevailing wages in a community of persons with similar work histories and occupational qualifications. *Kjos v. Brandenburger,* 552 N.W.2d 63, 65–66 (N.D.1996); *Nelson v. Nelson,* 547 N.W.2d 741, 748 (N.D.1996). But our standard of review recognizes the trial court is in a far better position to weigh the evidence and judge the credibility of witnesses. *Nelson* at 747. Misty presented no evidence here to prove a pizza delivery person has the same occupational qualifications as a merchandise delivery person. She presented no evidence to show a greater amount of income could be imputed, based on Derek's work history, education, and experience, beyond minimum wages. Thus, we affirm the trial court's refusal to impute more income to Derek under N.D.Admin.C. 75–02–04.1–07(3)(b).

[¶ 17] Still, the trial court's conclusion "that there is no basis to impute income in addition to the income imputed" previously was mistaken and clearly erroneous. As *Heley v. Heley,* 506 N.W.2d 715, 721 (N.D.1993) explained: "A mere recitation that the guidelines have been considered in arriving at the amount of a child support obligation is insufficient to show compliance with the guidelines." Clearly, Derek has not been earning the minimum that the guidelines dictate.

[¶ 18] The guidelines require "monthly gross income based on earning capacity equal to the *greatest* of subdivisions a through c, less actual gross earnings, ... be imputed to an obligor who is ... underemployed." N.D.Admin.C. 75–02–04.1–07(3)(our emphasis).[2] Derek has been employed only part-time at a minimum wage job for two years. That circumstance alone compelled a finding of underemployment and a correct calculation of the "baseline" minimum to be imputed to an able-bodied obligor like Derek. As *Schleicher v. Schleicher,* 551 N.W.2d 766, 769 (N.D.1996) explained: "A proper finding of net income is essential to a determination of the correct amount of child support under the guidelines." Further, "Section 75–02–04.1–02(10), N.D.A.C., requires that a child support order include a statement of the obligor's net income and 'how that net income was determined.'" *Id.*

[¶ 19] The "baseline" minimum imputation is "[a]n amount equal to one hundred sixty-seven times the hourly federal minimum wage." N.D.Admin.C. 75–02–04.1–07(3)(a). A young and ablebodied parent is certainly underemployed when he is still working part-time at minimum wages two years after his child was born, more than a year after grad-

---

**2.** The agency history for this regulation is helpful:

> Subsection 3 is the heart of the section. It requires imputation based on earning capacity equal to the greatest of three alternatives, less actual earnings. *Subdivision a is the monthly equivalent income for working full-time at federal minimum wage. This will form the baseline, and it may be proved by judicial notice of the hourly federal minimum wage.* Subdivision b presents all the proof difficulties and would ordinarily require expert testimony (which may be available from the local Job Service office). Subdivision c calculations are based solely upon the obligor's actual wage history.

> It allows imputation in cases where the obligor has a significant income decline. In almost all cases, the choice will be between subdivision a or c. Subdivision b will be used in those rare cases which merit the potentially considerable investment in discovery and expert witness fees required. We assume most such cases would be handled by private attorneys.

(our emphasis). Summary of Comments Received in Regard To Proposed New N.D.Admin.C. Ch. 75–02–04.1, Child Support Guidelines, transmitted to Executive Director of North Dakota Department of Human Resources by Blaine Nordwall on December 18, 1990.

uating from high school, and not attending college or trade school. Derek is obligated, at the very least, for child support from full-time employment at the current minimum hourly wage.

[¶ 20] The applicable federal minimum hourly wage when Misty moved to increase Derek's child support was a recently enacted increased wage effective in October 1996. 29 U.S.C.A. § 206. Although this increase of the minimum wage by 50 cents per hour was not specifically called to the trial court's attention, the current $4.75 per hour was mentioned, and it was the applicable and correct law.[3] Also, Derek's less than full-time employment was evident in this record, and the wage information he furnished was fragmentary, incomplete, and unsatisfactory.

[¶ 21] Derek offered only a single wage stub for a second two-week period in June.[4] The stub obviously showed less than fulltime employment for the year-to-date—$4,125.42 in wages—when full-time, one hundred sixty seven hours per month at the minimum hourly wage of $4.75 for six months, would be $4,760. Thus, Derek was earning $635 less than the mandated "baseline" imputed earnings for the first six months of 1997. He thus earned at least $105 monthly less than the full-time employment at the correct mini-mum wage required by the guidelines for "baseline" imputation.

[¶ 22] Derek also failed to submit his 1996 tax return or complete information on his earnings. See N.D.Admin.C. 75–02–04.1–02 at subsection(7) ("Income must be documented through the use of tax returns, current wage statements, and other information sufficiently to fully apprise the court of all gross income."); and at subsection(10) ("Each child support order must include a statement of the net income of the obligor used to determine the child support obligation, and how that net income was determined."). See also Helbling v. Helbling, 541 N.W.2d 443, 448 (N.D.1995). Derek's incomplete documentation of his income and the trial court's mistaken finding ("there is no basis to impute income in addition to the income imputed by the amended judgment dated July 24, 1996") are inconsistent with this plain record and a correct application of the law.

[¶ 23] The minimum wage went from $4.25 to $4.75 in October 1996. See 29 U.S.C.A. § 206. At the monthly full-time employment of 167 hours required by the guidelines, the higher minimum hourly wage plainly calculates an increased support. The minimum wage is statutory; the regulation fixes 167 hours per month for imputed full-time employment; and the related tax rates and tables are public records,[5] judicially noticea-

3. We should apply the right rule of law even if it was not properly presented to the trial court or to this court. See State v. Holecek, 545 N.W.2d 800, 803 (N.D.1996)(quoting LePire v. Workmen's Compensation Bureau, 111 N.W.2d 355, 359 (N.D.1961))("Questions not raised before the trial court will not be considered on appeal. But, ... 'where a pertinent statute has been overlooked by both counsel and the court, resulting in plain error in a matter that is of public concern, this court will consider the error even though it is not brought to our attention by either of the parties.'") (citation omitted); State v. Larsen, 515 N.W.2d 178, 182 (N.D.1994)(quoting Elder v. Holloway, 510 U.S. 510, 512, 114 S.Ct. 1019, 1021, 127 L.Ed.2d 344 (1994))("We have a duty to conduct appellate review 'in light of all relevant precedents, not simply those cited to or discovered by the district court.' Otherwise, decisions might turn on 'shortages in counsels' or the court's legal research or briefing', and 'could occasion appellate affirmation of incorrect legal results.'") (citations omitted); Kamen v. Kemper Fin. Serv., Inc., 500 U.S. 90, 99, 111 S.Ct. 1711, 1717, 114 L.Ed.2d 152 (1991)("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

4. The stub shows he worked 76.31 hours for the two week period, and his net pay was $248.65. 73.66 hours were at the rate of $4.75, but 2.65 hours were at $7.13, which is 1.5 of $4.75. This shows that Derek worked 2.65 hours over forty during one week, and nearly nine hours less than forty during the second. There is also an entry for $38.75 earned, with no hours shown, that implies he received tips not included in any wage calculation for child support.

5. The rate for the standard deduction, 26 U.S.C.A. § 63(c)(2), is set out in 26 U.S.C.A. § 1; see Revenue Procedure 96–59 § 3.05. For amount of personal exemption, 26 U.S.C.A. § 151(d)(1); see Revenue Procedure 96–59 § 3.09. For the 1997 Tax Table, see 26 U.S.C.A. § 1; Revenue and Procedure 96–59 § 3.01. Rates for FICA and Medicare deductions are set out in 26 U.S.C.A. § 3101(a) & (b). For North Dakota's income tax withholding rate, see N.D.C.C. § ·57–38–30.3(2).

ble [6] whenever the obligor fails to produce complete information to correctly calculate child support. The correct calculation is uncomplicated arithmetic that even an overworked trial judge should be able to do in moments.[7] Even a small amount more in child support from additional imputed earnings will often make a significant difference to a struggling custodial parent at the low end of the economic scale.

[¶ 24] Public policy abhors allowing a parent to avoid the obligation to support a child. *See* N.D.C.C. § 14–09–08: "Parents shall give their children support and education suitable to the child's circumstances." In an era when even a welfare parent with custody must work and earn minimum wages, the courts must expect no less from a non-custodial parent.

[¶ 25] Because the trial court failed to require proper proof of income from the obligor, and also failed to correctly apply the guideline requiring imputation of the "baseline" minimum wages from full-time employment, we reverse and remand for proper development of Derek's earnings and a correct application of the law of earning capacity to be imputed to an underemployed obligor.

[¶ 26] SANDSTROM and MARING, JJ., concur.

VANDE WALLE, Chief Justice, concurring in part.

[¶ 27] I do not believe it is unreasonable to require a trial judge to apply the current minimum wage in computing child support under N.D.Admin.C. 75–02–04.1–07(3)(a), even if the specific amount is not in evidence. I agree with Justice Meschke; the trial court should take judicial notice of the amount. Here, the "new" minimum wage, widely publicized in the media, became effective in October 1996, several months before the order from which this appeal is taken.

[¶ 28] I concur in the majority opinion insofar as it remands this matter for a computation of child support that employs the current minimum wage figure.

[¶ 29] Gerald W. Vande Walle, C.J.

NEUMANN, Justice, dissenting.

[¶ 30] Because the majority addresses issues not raised below nor on appeal, and more importantly because in doing so the majority radically alters the role of trial courts in child support cases, I dissent.

[¶ 31] Misty Ullman moved for an increase in Derek Berg's child support obligation, arguing Berg is underemployed under N.D. Admin. Code § 75–02–04.1–07 and should have a larger income imputed to him. Ullman asserted Berg is capable of earning $5.82 per hour, the amount an average delivery person earns, according to the Fargo Wage and Benefit Survey of 1996. Ullman also asserted Berg has not attempted to seek more gainful or full-time employment.

---

**6.** *See* N.D.R.Ev. 201(c) ("A court may take judicial notice, whether requested or not") and (f) ("Judicial notice may be taken at any stage of the proceeding").

**7.** $4.75 × 167 = $793.25 monthly gross × 12 = $9,519.00 yearly gross, less $4,150.00 (standard deduction) and $2,650.00 (personal exemption) = $2,719.00 taxable income. Federal income tax from tax table on $2,719.00 is $407.00. State income tax is .14 × $407.00 = $56.98. FICA and Medicare deductions are 7.65% ($9,519.00 × .0765 = $728.20). $9,519.00—$407.00—$56.98—$728.20 = $8,326.82 yearly net income. $8,326.82/12 = $693.91 monthly net income that tables a monthly child support of $133.00.

Moreover, the state and federal minimum wage for Derek increased to $5.15 on September 1, 1997. *See* N.D.Admin.C. 46–02–07–02.1; 29 U.S.C.A. § 206. $5.15 × 167 = $860.05 monthly gross × 12 = $10,320.60 yearly gross. $10,-320.60 less $4,150.00 (standard deduction) and $2,650.00 (personal exemption) = $3,520.60 taxable income. Federal income tax from tax table on $3,520.60 is $529.00. State income tax is .14 × $529.00 = $74.06. FICA and Medicare deductions are 7.65% ($10,320.60 × .0765 = $789.53). $10,320.60—$529.00—$74.06—$789.53 = $8,928.01 yearly net income. $8,928.01/12 = $744.00 monthly net income that tables a monthly child support of $133.00. However, adding only the $38.75 in tips recorded on his June paycheck stub, Derek's monthly net income would exceed $750.00 that tables a monthly child support of $168.00.

The trial court's order here was entered on August 6, 1997. *See* N.D.Admin.C. 75–02–04.1–02(8) ("If circumstances that materially affect the child support obligation are very likely to change in the near future, consideration may be given to the likely future circumstances.").

[¶ 32] Berg resisted Ullman's motion, arguing he is currently paying child support based on full-time employment at minimum wage, an amount close to the $614 per month net income he is earning. Berg's work history shows his only employment has been working at Domino's; he has no other skills. Berg argued delivering pizzas is not comparable to delivering merchandise such as appliances and furniture, and therefore, he is not able to earn the average wage of delivery persons as reflected in the 1996 Fargo Wage and Benefit Survey.

[¶ 33] The trial court denied Ullman's motion, stating it had no basis on which to impute additional income. Ullman appealed.

[¶ 34] On appeal, Ullman argued the trial court was clearly erroneous in determining Berg is not underemployed under N.D. Admin. Code § 75–02–04.1–07. Both parties argued extensively whether Berg was underemployed. However, the trial court did not find Berg was not underemployed. The trial court simply denied the motion "on the grounds that there is no basis to impute income in addition to the income imputed by the amended judgment dated July 24, 1996...." A review of the referee's July 1996 findings shows Berg was already considered to be underemployed. The referee found Berg was only working part time, and was not suffering from a disability precluding him from working full time. The trial court, therefore, ordered Berg to pay child support based on full-time minimum wage by approving the referee's findings. These findings were not appealed.

[¶ 35] A trial court is authorized to impute income to an obligor *only* if the obligor is unemployed or underemployed. N.D. Admin. Code § 75–02–04.1–07(3); *see also Nelson v. Nelson*, 547 N.W.2d 741, 746–47 (N.D. 1996) (stating adequate evidence must be presented to find an obligor is underemployed, or income cannot be imputed). Because the trial court imputed income to Berg in 1996, it is clear the trial court considered him underemployed.

[¶ 36] A trial court's determinations of child support are findings of fact and will be affirmed unless they are clearly erroneous. *In Interest of E.H.*, 1997 ND 101, ¶ 3, 564

N.W.2d 281. Likewise, a determination regarding underemployment is also a finding of fact. *Kjos v. Brandenburger*, 552 N.W.2d 63, 63–64 (N.D.1996). A finding of fact is clearly erroneous only if it is induced by an erroneous view of the law, if there is no evidence to support it, or if even though there is some evidence to support it, the reviewing court is left with a definite and firm conviction a mistake has been made. *Id.*

[¶ 37] The issue before the trial court and raised on appeal was whether Berg should be required to pay additional child support based on his underemployment. The North Dakota Administrative Code § 75–02–04.1–07 authorizes income to be imputed to an underemployed child support obligor based on the obligor's earning capacity rather than his actual earned income. *Surerus v. Matuska*, 548 N.W.2d 384, 386 (N.D.1996); *Nelson*, 547 N.W.2d at 744.

[¶ 38] By definition, "[a]n obligor is 'underemployed' if the obligor's gross income from earnings is significantly less than prevailing amounts earned in the community by persons with similar work history and occupational qualifications." N.D. Admin. Code § 75–02–04.1–07(1)(b). When an obligor is found to be underemployed, N.D. Admin. Code § 75–02–04.1–07(3), outlines the trial court's options for imputing income:

"3. Except as provided in subsections 4 and 5, monthly gross income based on earning capacity equal to the greatest of subdivisions a through c, less actual gross earnings, must be imputed to an obligor who is unemployed or underemployed.

a. An amount equal to one hundred sixty-seven times the hourly federal minimum wage.

b. An amount equal to six-tenths of prevailing gross monthly earnings in the community of persons with similar work history and occupational qualifications.

c. An amount equal to ninety percent of the obligor's greatest average gross monthly earnings, in any twelve months beginning on or after thirty-six months before commencement of the proceeding before the

court, for which reliable evidence is provided." N.D. Admin. Code § 75–02–04.1–07(3).

Because the trial court had already required Berg to pay the amount under subdivision a, and Ullman did not contest the amount already imputed, subdivision a was not at issue. Because subdivision c clearly does not apply, Ullman had the burden to show she was entitled to more child support under subdivision b. Therefore, Ullman was required to prove the amount currently imputed to Berg under N.D. Admin. Code § 75–02–04.1–07(3)(a) was less than six-tenths of the prevailing earnings in the community of persons with similar work history and occupational qualifications, under N.D. Admin. Code § 75–02–04.1–07(3)(b).

[¶ 39] The majority goes through the motions of showing how Ullman failed to prove she was entitled to more child support under N.D. Admin. Code § 75–02–04.1–07(3)(b), and affirms the trial court on this point. This was the only issue before the trial court, and the only issue raised before this Court on appeal. Affirming this issue should conclude the case. Unfortunately, the majority does not stop there. The majority then reverses and remands the case to the trial court based on the calculation of support already imputed—an amount never questioned below, and never questioned on appeal. The majority, at length, expounds on Berg's failure to work full time, and his failure to attend school. Those facts are irrelevant. The record clearly shows Berg was earning less than full-time wages at minimum wage, yet he was paying a child support obligation based on full-time minimum wage under N.D. Admin. Code § 75–02–04.1–07(3)(a).

[¶ 40] The majority has done a masterful job of re-lawyering this case, and in doing so, has faulted a fair and impartial trial judge for declining to choose sides. The burden the majority now places on trial courts radically alters the role of trial judges in child support cases, from fair and impartial adjudicators, to advocates for obligees.

[¶ 41] Re-lawyering is not the appropriate role of an appellate court. It is contrary to our own precedents. On countless occasions this Court has shown its disapproval for retrying cases when reasonable evidence in the record supports the trial court's findings. *Robert, et al. v. Aircraft Inv. Co.*, 1998 ND 62, ¶ 10; *Reimche v. Reimche*, 1997 ND 138, ¶ 13, 566 N.W.2d 790; *Thompson v. City of Watford City*, 1997 ND 172, ¶ 12, 568 N.W.2d 736; *Matter of Estate of Nelson*, 553 N.W.2d 771, 774 (N.D.1996); *Buzick v. Buzick*, 542 N.W.2d 756, 758 (N.D.1996); *Mahoney v. Mahoney*, 538 N.W.2d 189, 193 (N.D.1995); *Schmidkunz v. Schmidkunz*, 529 N.W.2d 857, 859 (N.D.1995). As we stated in *Morales v. Morales*, 402 N.W.2d 322, 324 (N.D. 1987), "it no longer is the function of this court to scour the record for issues which could lead to a result we might believe to be more desirable, and we must resist the urge to retry the case for the parties." "The existence of any doubt as to whether the trial court or this Court is the ultimate trier of fact issues in non-jury cases is, we think, detrimental to the orderly administration of justice, impairs the confidence of litigants and the public in the decisions of the district courts, and multiplies the number of appeals in such cases." *Buzick*, 542 N.W.2d at 758 (citations omitted). Likewise, this Court has also disapproved of considering issues on appeal not raised before the trial court, and has generally not entertained such issues. *Matter of Estate of Peterson*, 1997 ND 48, ¶ 19, 561 N.W.2d 618; *RLI Ins. Co. v. Heling*, 520 N.W.2d 849, 854 (N.D.1994); *State v. Tweed*, 491 N.W.2d 412, 417–18 (N.D.1992); *Christensen v. Christensen*, 397 N.W.2d 456, 457 (N.D.1986); *Bard v. Bard*, 380 N.W.2d 342, 344 (N.D.1986). In *Hansen v. Winkowitsch*, 463 N.W.2d 645, 646 (N.D.1990), we held "[i]ssues or contentions not adequately developed and presented at trial are not properly before this Court."

[¶ 42] This case is much like *Mahoney v. Mahoney*, 1997 ND 149, 567 N.W.2d 206. In *Mahoney*, the obligor claimed the trial court clearly erred in adopting the special master's computation of net income. *Id.* at ¶ 10, 567 N.W.2d 206. The obligor claimed the special master erred by not using the tax tables and standard deductions to determine the obligor's income to calculate his child support obligation. *Id.* at ¶¶ 10–11, and n. 1, 567

N.W.2d 206. We refused to entertain the issue of miscalculation of net income because that issue was not raised below. *Id.* at ¶ 15, 567 N.W.2d 206. In the present case, neither party raised the issue of a miscalculation; it was created by the majority. As we stated in *Mahoney,* "[g]enerally, the failure to file timely objections to the report and recommendation of a special master waives the right to appeal the recommended findings. . . . [T]he litigants have a responsibility to assist the process . . . by making their timely objections to the report. . . ." *Id.* at ¶ 12, 567 N.W.2d 206. We do not address issues or contentions for the first time on appeal; to do so gives a party a chance to redo what should have been done in the first place. *Id.* at ¶ 13, 567 N.W.2d 206. "Requiring a party to first present an issue to the trial court, as a precondition to raising it on appeal, gives that court a meaningful opportunity to make a correct decision, contributes valuable input to the process, and develops the record for effective review of the decision." *Id.* at ¶ 13, 567 N.W.2d 206. In the pursuit of a short-sighted vision of justice, the majority has abandoned its impartiality, and has faulted a trial judge for maintaining hers.

[¶ 43] The majority recognizes the increased minimum wage rate was not called to the trial court's attention. I do not see how this differs from the miscalculation issue in *Mahoney.* I agree the trial court could have judicially noticed the increased minimum wage rate under Rule 201, N.D.R.Evid., in one of two ways. First, the trial court could have judicially noticed the increased minimum wage rate at Ullman's request.[8] The trial court, in its discretion, also could have judicially noticed the minimum wage *sua sponte.* Under Rule 201(d), N.D.R.Evid., judicial notice is mandatory only if it is re-

quested by a party and the trial court is supplied with the necessary information. As noted Rule 201, N.D.R.Evid., Explanatory Note, judicial notice should not be used as a device on appeal to correct an almost complete failure to present adequate evidence to the trial court. That is precisely what the majority has done here.

[¶ 44] A recent study of proposed changes to rules on judicial notice in the federal courts addresses judicial notice of law. Paul R. Rice, *The Evidence Project: Proposed Revisions to the Federal Rules of Evidence,* 171 F.R.D. 330 (1997). "Judicial notice of law does not shift from the parties to the court the duty to develop the case and ferret out the application of law. It remains the duty of the parties to bring to the court's attention the rule of law governing the case. . . . 'A trial court cannot be convicted of error for something not brought to its attention.'" *Id.* at 410, Commentary, (quoting *Great American Ins. v. Glenwood Irrigation Co.,* 265 F. 594, 597 (C.C.A.8th., 1920)).[9]

[¶ 45] Public policy may abhor a parent's avoiding a child support obligation, as the majority correctly notes, but public policy has not yet placed the burden on a respondent to prove a movant's case, nor has public policy declared trial judges should abandon even the appearance of impartiality, and actively assume the management and presentation of a movant's case. Child support or not, our district courts are still courts of law, bound by strictures of fairness and impartiality, including the Rules of Judicial Conduct[10] and the requirements of due process. "A trial court must decide factual matters only upon the evidentiary record of testimony and exhibits in that court." *State v. LaMorie,* 558 N.W.2d 329, 331 (N.D.1996). As we not-

---

8. Agency history shows N.D. Admin. Code § 75–02–04.1–07(3)(a) is to be proven: "Subsection 3 is the heart of the section. It requires imputation based on earning capacity equal to the greatest of three alternatives, less actual earnings. Subdivision a is the monthly equivalent income for working full time at federal minimum wage. This will form the baseline, and it may be *proved* by judicial notice of the hourly federal minimum wage." Summary of Draft Changes to N.D. Admin. Code ch. 75–02–04.1, March 14, 1994, Comments of Blaine Nordwall,

before the North Dakota Department of Human Services (emphasis added).

9. Rule 201, N.D.R.Evid., is patterned after Rule 201 F.R.Evid., and we may look to persuasive federal authority for interpretation of our rules. *Aggie Investments v. Public Serv. Comm'n,* 470 N.W.2d 805, 811 (N.D.1991).

10. Canon 2A, North Dakota Code of Judicial Conduct.

ed in *State v. Foard,* 355 N.W.2d 822, 824 (N.D.1984), "[A] judge's authority to unilaterally elicit evidence is not unbounded but is tempered by the requirement that a judge at all times remain impartial. A judge may not be a partisan advocate for either side and in conducting a trial must respect the traditional rules and concepts which guaranty the defendant's right to a fair trial." By placing the burden of mandatory *sua sponte* judicial notice on the trial courts, the majority requires the trial courts to become advocates for child support obligees. This is not the role our trial courts should take in determining child support matters.

[¶ 46] The majority also creates its own issue by asserting Berg failed to provide adequate information of his earnings under N.D. Admin. Code § 75–02–04.1–02(7). This issue, likewise, was not raised by a party before the trial court, nor on appeal. The majority looks to N.D. Admin. Code § 75–02–04.1–02(7) to attempt to shift the burden of production and persuasion to Berg. The majority cites Berg's incomplete documentation of his income as a reason for reversal. However, the majority fails to recognize N.D. Admin. Code § 75–02–04.1–07(8) provides its own remedy for any failure to provide information of an obligor's income. *See also* N.D.C.C. § 14–09–08.6(2) (stating "[i]f information concerning obligor's income sufficient to accomplish the review has not been timely furnished by the obligor, the child support agency may apply to the court for an order compelling the obligor to furnish information sufficient to accomplish the review."). N.D. Admin. Code § 75–02–04.1–07(8), provides:

"If the obligor fails, upon reasonable request made in any proceeding to review a child support obligation, to furnish reliable information concerning the obligor's gross income from earnings, income must be imputed based on the greatest of:

a. Subdivisions a through c of subsection 3; or

b. The obligor's income, at the time the child support order was entered or last modified, increased at the rate of ten percent per year."

Berg's alleged failure to provide reliable information about his income was simply not an issue. Ullman's attorney served a subpoena duces tecum on Berg, requesting he bring the following financial information to the hearing: (1) all pay stubs, wage statements and W–2 forms from the previous year; and, (2) all federal and state income tax returns for the years 1995 and 1996. However, at the hearing, Ullman's attorney did not request production of the documents, and the information contained in them simply was not an issue. The transcript of the hearing reveals Ullman's attorney agreed with the figures presented on Berg's income. During the hearing, Ullman's attorney stated:

"I have read the brief of Ms. Holman [Berg's attorney] in regard to the amounts of money or the figures that she's alleging. I believe she reads it correctly. So I don't believe that is an issue. I believe it's purely a matter of underemployed. Our issue is that there is a presumption if you're under 90—or under 60 percent employed—or under 60 percent of what people in the community make with your expertise and skill that you're underemployed."

Nowhere in the transcript is Berg asked to produce a copy of his tax return, or other wage information other than the pay stub and financial affidavit which he provided. Other statements in the transcript by Ullman's attorney reflect his acknowledgment that Berg was already paying support based on full-time minimum wages. For example, Ullman's attorney, stated: "The only reason he's even paying minimum wage—or being charged at minimum wage is because the Court ordered that he was going to be assessed at that amount."

[¶ 47] Based on the evidence actually presented and the arguments actually made, I do not believe it was clearly erroneous for the trial court to find there was no basis to impute further income in addition to what had already been imputed. I would affirm on the issues raised and argued and leave this case at that.

[¶ 48] William A. Neumann