**Joel D. KRAFT, Sr., Plaintiff and Appellee,**

v.

**Nancy B. KRAFT, Defendant and Appellant.**

No. 960085.

Supreme Court of North Dakota.

Oct. 22, 1996.

Schmitz, Moench & Schmidt, Bismarck, for plaintiff and appellee; argued by Orell D. Schmitz.

Kapsner & Kapsner, Bismarck, for defendant and appellant; argued by Gerald (Jud) E. DeLoss, Apple Valley, MN.

MESCHKE, Justice.

Nancy Kraft appealed an amended divorce decree changing custody of her children to Joel Kraft. We reverse and remand for more specific findings because the trial court incorrectly analyzed the effect of domestic violence.

Joel and Nancy Kraft were married in 1982, and had three children: Doris, Joel, Jr., and Sadie. Joel and Nancy were separated in 1988. In June 1990, Joel pleaded guilty to drug charges and was sentenced to prison for fifty-seven months and, while in prison, he petitioned for divorce. Joel and Nancy were divorced June 14, 1991. By a stipulated decree, Nancy got custody of the children, and Joel got liberal visitation rights.

On August 2, 1995, Joel moved to transfer custody to himself for changed circumstances. In his supporting affidavit, Joel alleged: "[Nancy's] boyfriend, and soon to be husband, David Torgerson, is engaging in domestic violence in [Nancy's] home where the minor children reside [and has] a history of domestic violence, and other criminal charges and convictions."

Nancy denied the allegations of domestic violence by Torgerson, and she alleged Joel committed domestic violence before the divorce. She urged Joel's past violence prevented him from getting custody.

After a hearing, the trial court changed custody to Joel, but stayed the decision "to avoid the children having to move twice should [Nancy] prevail on appeal." Nancy contends that the trial court failed to give sufficient weight to the evidence of domestic violence by Joel and thus failed to apply the presumption against placing custody with a parent guilty of domestic violence. We agree that the trial court erroneously avoided applying the presumption here and so did not make the necessary specific findings on whether the presumption had been rebutted.

■■■ A trial court's custody decision is a finding of fact that we will not reverse unless it is clearly erroneous. *Krank v. Krank,* 541 N.W.2d 714, 716 (N.D.1996). As we explained in *Heck v. Reed,* 529 N.W.2d 155, 159 (N.D.1995), "[a] finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made." In this case, the trial court's findings were both mistaken and affected by an erroneous view of the law about domestic violence in a custody case.

■■ A trial court must consider a motion to change custody in two stages. First, the court must determine whether a significant change in circumstances has occurred since the prior custodial placement. *Wetch v. Wetch,* 539 N.W.2d 309, 311 (N.D.1995). Second, the court must then decide whether the changed circumstances *compel* changing custody for the best interests of the children. *Id.*

■■ Here, the trial court expressly found significant changes in circumstance:

[Joel] has served a significant prison term. He is *now gainfully employed.* Uncontradicted evidence is that he is free from drug and alcohol use which were significant before his incarceration. [Nancy] now lives with David Torgerson, with whom she did not even have a relationship at the time

the divorce decree was entered. The credible evidence is that [David] has perpetrated violence recently on [Nancy] and on others, and that he has a significant problem with alcohol use. The evidence is that he has violent tendencies. He completed a domestic violence program but the evidence is that he has committed acts of domestic violence since he completed the program. It appears [Nancy] has a significant alcohol use problem as well, although the Court has no evidence whether such was the case at the time the court issued the divorce decree.

The Court finds that the evidence establishes a significant change in circumstances.

(footnote omitted). *Wenzel v. Wenzel,* 469 N.W.2d 156, 157 (N.D.1991) held that a custodial parent residing with a companion who has beat her and caused her child to fear him is a significantly changed circumstance. Here, there is ample evidence of domestic violence by Nancy's live-in companion, David Torgerson. Therefore, we conclude the trial court's finding of a significant change in circumstances is not clearly erroneous.

The second stage considers whether the changed circumstances compel a change of custody. In that part of the analysis, when the prior custodial decree has been based on a stipulation, we hold that a trial court must consider all relevant evidence, including predivorce conduct and domestic violence by each of the parents. *Wetch,* 539 N.W.2d at 312–13. Although the trial court considered all the relevant evidence here, it misapplied the law of custody in doing so.

The law governing placement of custody directs:

In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, this evidence creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. *This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that par-*

*ent's participation as a custodial parent. The court shall cite specific findings of fact to show that the custody or visitation arrangement best protects the child* and the parent or other family or household member who is the victim of domestic violence.

NDCC 14–09–06.2(1)(j) (emphasis ours). NDCC 14–07.1–01(2) defines domestic violence as "physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members."

■ Under NDREv 301(a), a "presumption substitutes for evidence of the existence of the fact presumed until the trier of fact finds from credible evidence that the fact presumed does not exist." Nancy contends that there was sufficient credible evidence of violence by Joel to invoke the presumption against placement of custody with Joel. We agree the presumption applies here.

By minimizing Joel's violent conduct, the trial court mistakenly concluded the evidence was insufficient:

Here, there is insufficient evidence of domestic violence to raise the presumption against [Joel]. The evidence is that he admitted striking [Nancy] in 1988, with no more elaboration on the record except that it resulted in [Nancy] obtaining a protection order. The December 1990 incident happened within days of when [Joel] was to begin serving five years in prison. Even if the Court believes [Nancy]'s version of the events, the rationale of *Ryan v. Flem[m]ing*, 533 N.W.2d 920 (N.D.1995) applies to this case. "The acts inflicted no actual injury, were isolated and remote in time, and were viewable as demonstrative." Here, there was no injury, the acts were isolated and happened more than five years ago, and were likely a reaction to the prospect that [Joel] was to be in prison for a considerable time.

We disagree with the trial court's minimization of Joel's predivorce conduct, and we are firmly convinced that this finding was mistaken.

In its analysis, the trial court relied on *Ryan v. Flemming*, 533 N.W.2d 920 (N.D. 1995), to find "no actual injury" was inflicted, to hold the acts were "isolated and remote," and to imply Joel's acts "were viewable as demonstrative," too. This misapplied *Ryan*. There, the parent admitted smashing a flower pot and pulling the phone out of the wall. *Ryan*, 533 N.W.2d at 923–24. The trial court found those acts insufficient for the presumption under NDCC 14–09–06.2 because no actual injury was inflicted, the acts were isolated and remote, and the acts were viewable as demonstrative. *Id.* at 924. We affirmed that holding, but we conclude that reasoning cannot fit this case and that the trial court thus misapplied *Ryan*. Here, Joel's actions reflect not only an intent to inflict fear, but also caused actual physical harm to Nancy.

Evidence of domestic violence by Joel mainly centered on two events. Nancy testified that she got a domestic-violence protection order after Joel hit her with a "closed fist" in 1988. Although the protection order was not in evidence, Joel admitted striking Nancy during an argument, but tried to explain it was "accidental."

The second event happened December 12, 1990, while they were separated, just before Joel began his prison term. Then, Joel was arrested for terrorizing Nancy. The arresting officer reported Nancy said Joel had verbally and physically abused her for three consecutive days. Nancy alleged that Joel had broke into her trailer and threatened her with a knife. Reportedly, Joel threatened to "beat the shit out of her" and to kill her, and he tried to choke her and did hit her in the mouth. The officer reported: "Nancy's lower lip was swollen and black and blue. It also looked as if the lip had been split." However, prosecution of the terrorizing charge against Joel was later dropped when Joel went to prison. At trial, Joel admitted that he had been arrested, but tried to explain the allegations away.

Nancy also testified about several other events of domestic violence by Joel. The oldest child testified Joel had struck Nancy.

This extensive evidence of domestic violence certainly created a presumption against

custody by Joel, unlike the evidence in *Ryan*. Although the trial court questioned some of Nancy's memory of events, Joel admitted striking Nancy in 1988, the officer's 1990 report corroborated another serious incident, and the oldest child's testimony confirmed Joel's violent conduct before the divorce. We hold that the trial court mistakenly minimized Joel's past violence, and that sufficient evidence of domestic violence by Joel created a presumption against his custody.

■ We understand the trial court's hesitation to apply the statutory presumption against Joel when it believed it could not apply the same presumption against David Torgerson, who is not a parent subject to subsection (j). In its analysis, the court reasoned: "The practical effect of all this is that domestic violence perpetrated by a parent at any time in the past is given more weight than ongoing, present day evidence of domestic violence by a live-in boyfriend." The trial court viewed that result as absurd, although its analysis accurately focused on a real difficulty in the statutory formulation.

Read literally, the statute that controls custodial placement establishes an express presumption against a violent parent, but establishes only an evidentiary factor without a presumption for a person in the household who is not a parent. Subsection (j) creates the presumption; subsection (k) designates the factor.

> The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

NDCC 14–09–06.2(1)(k). While the (k) factor does direct consideration of domestic violence by a non-parent in the custodial parent's household, it expresses no presumption. We do not agree, however, as the trial court apparently assumed, that this makes third-party violence only one of those other factors that cannot be used to overcome the presumption.

Violence is equally injurious to a child's well-being whether committed by a parent or by another person in the custodial household. We have already recognized this. *Wenzel v. Wenzel*, 469 N.W.2d at 157–58 ("Given the existence of recent domestic violence exhibited by the man who may become [the children's] stepfather, and [their] very real and understandable fear of that man, the trial court did not err in finding that it was in the child[ren]'s best interests to live with [the other parent]."). Chief Justice Vande Walle elaborated on this principle in his concurrence in *Heck v. Reed*, 529 N.W.2d at 166:

> Because of the lasting effects of domestic violence on a child, whether or not the child is abused or views the violence …, I note the provisions of section 14–09–06.2(1)(k): [text of subsection (k) omitted]. A custodial parent who has a continuing relationship with a perpetrator of domestic violence should expect to have custody of that child transferred to the non-custodial parent unless there is clear and convincing evidence that the best interests of the child require the continued participation as a custodial parent.

While subsection (j) is designed to protect both the child and the parent, subsection (k) clarifies that protection of the child is the more important of the two goals. The scale of violence in the children's current home, even though not by a parent, must be measured against the degree of earlier violence by the noncustodial parent in deciding whether a change of custody will best protect the children.

The trial court cannot avoid the presumption by minimizing the earlier violence as "insufficient" for the presumption, but it can assess whether the presumption has been rebutted by equivalent or greater violence in the custodial household in deciding whether the change is needed. The trial court must make the correct and direct analysis: Is the presumption against placing custody with a parent who has been violent in the past, but not recently, overcome by evidence of ongoing violence in the custodial parent's present household?

■ On remand, that is the analysis that the trial court should complete through spe-

cific findings. The trial court may need to adapt and employ a version of the "proportionality" analysis we employed in *Krank v. Krank*, 529 N.W.2d 844, 850 (N.D.1995):

> [A] proper construction of the statute requires that if domestic violence has been committed by both [parental figures], the trial court measure the amount and extent of domestic violence inflicted by both.... If the amount and extent of domestic violence inflicted by one ... is significantly greater than that inflicted by the other, the statutory presumption against awarding custody to [a] perpetrator will apply only to the [one] who has inflicted the greater domestic violence, and will not apply to the [one] who has inflicted the lesser. However, if the trial court finds that the amount and extent of the violence inflicted by one ... is roughly proportional to the violence inflicted by the other ..., and both ... are otherwise found to be fit ..., the presumption against awarding custody to either perpetrat[or] ... ceases to exist. In such a case, the trial court is not bound by any presumption, but may consider the remaining customary best-interests factors in making its custody decision.

(footnote omitted). While there may not be conflicting presumptions in a case like this, there is certainly conflicting evidence about violence in each home for the trial court to evaluate. In the correct analysis, the trial court must weigh which household risks the greater harm and, correspondingly, which household will better protect the children.

We recognize this approach may have been what the trial court was attempting to do in this case with its concluding findings:

> There is no evidence of any violence, domestic or otherwise, by [Joel] since that [1990] incident. In fact, the evidence is that on at least one occasion [Nancy] sought refuge from Torgerson at [Joel]'s mobile home.
>
> Factor "k" favors [Joel]. David Torgerson lives with [Nancy]. He was convicted of assault on a peace officer. There is evidence that he has assaulted [Nancy] and [her] brother. These events happened less than one year ago. The Court finds more credible the versions of events [Nancy]
described to police at the time of the incidents than the versions she testified to at the hearing. [Nancy] is understandably reluctant to jeopardize her custody of the children by confirming that her live-in boyfriend is violent. The demeanor and attitude of Torgerson at the hearing render his versions of events, his denials, and his avowed lack of recollection less than credible. The fact that Torgerson attended the domestic violence program is no evidence of "rehabilitation" since these events happened well after that program was completed. There is also evidence that Torgerson abused his former girlfriend, which shows a pattern that is likely to continue in the absence of true rehabilitation.

> Factor "*l*" favors [Joel]. There is ample evidence of excessive alcohol use by [Nancy] and Torgerson.

> When all relevant factors are considered, a change of custody is necessary for the best interests of the children. While the change will cause short-term disruption in their lives, the evidence convinces the Court that remaining in a home shared with David Torgerson will damage the children's emotional well-being.

If the trial court was weighing whether the presumption was rebutted, it did not say so. Still, it is free to do so on remand if it makes complete findings on that subject.

We reverse and remand for the trial court to make specific findings on the application of the statutory presumption against Joel and on whether that presumption was overcome by the evidence about Joel's rehabilitation and about David Torgerson's ongoing violence in the present custodial household. In its discretion, the court may receive additional evidence, if it needs it. If the trial court concludes the presumption against custody by Joel has been rebutted, the trial court is entitled to make complete findings, to lift the stay, and to change custody to Joel.

VANDE WALLE, C.J., and MARING and NEUMANN, JJ., concur.

SANDSTROM, J., concurs in result.