1998 ND App 12

**Deborah CARVER, Plaintiff, Appellant and Cross–Appellee,**

v.

**Larry Joseph MILLER, Defendant, Appellee and Cross–Appellant.**

**Civil No. 980064CA.**

Court of Appeals of North Dakota.

Oct. 20, 1998.

Debra K. Edwardson, of Edwardson Law Office, Minot, for plaintiff, appellant and cross-appellee.

Lynn M. Boughey, of Boughey Law Firm, Minot, for defendant, appellee and cross-appellant.

PER CURIAM.

[¶ 1] Deborah Carver appealed from a district court judgment awarding Larry Joseph Miller custody of their daughter, Michaela Miller; granting Carver supervised visitation with Michaela; and ordering Carver to pay child support. Miller cross-appealed, claiming the court erred in treating the proceeding as an initial custody decision and in considering evidence Miller committed domestic violence. We affirm the custody, child support and visitation decisions, and we remand for implementation of specific guidelines for supervised visitation.

I

[¶ 2] Miller and Carver cohabitated at Miller's residence near Logan, North Dakota, from 1990 to 1994. Michaela was born out of wedlock on August 5, 1993. In December 1994, Carver, through the Ward County Regional Child Support Office, brought a paternity action against Miller. Miller admitted paternity and counterclaimed for custody of Michaela. Although there had been no formal custody determination, Carver had custody of Michaela after separating from Miller in 1994. In August 1995, the trial court denied Miller's request for temporary custody of Michaela. In 1996, Carver and Miller agreed Michaela would reside with Miller while Carver worked away from home as an exotic dancer.

[¶ 3] In July 1996, the court held a hearing regarding paternity and custody of Michaela. Miller appeared pro se. Carver did not ap-

pear at the hearing and later claimed she had overslept. The court awarded Miller custody of Michaela, finding Michaela had resided with Miller since January 1996. The court's findings stated Miller "expressed concerns about Deborah Carver's usage of controlled substances and alcohol. That no additional evidence was presented that further substantiated or negated [Miller's] concerns." Carver made no formal attempt to vacate the court's custody decision during the next year.

[¶ 4] In February 1997, Miller asked the Ward County Regional Child Support Office to establish Carver's child support obligation for Michaela. After an August 1997 hearing, the court ordered Ward County Social Services to conduct a custody investigation. Carver then moved for an ex parte interim order granting her temporary custody of Michaela pending an evidentiary hearing. Carver also moved for relief from the July 1996 judgment under N.D.R.Civ.P. 60, or, alternatively, for a change of custody based upon a significant change in circumstances. On August 15, 1997, the court issued an ex parte order granting Carver temporary custody of Michaela. Miller requested a hearing on the necessity of the ex parte order. The judge recused himself, and the Honorable Everett Nels Olson was assigned to hear the action. After a hearing on the necessity of the ex parte order, the court returned custody of Michaela to Miller pending an evidentiary hearing on Carver's motion for a change of custody.

[¶ 5] Miller then moved to limit evidence about his domestic violence to conduct after the July 1996 judgment. The court denied his motion, concluding:

the real crux of the matter [is] the fact that the trial judge [in the 1996 proceeding] made no finding concerning the child's best interests nor did the judge articulate any of the underlying factual considerations required by Section 14–09–06.2 NDCC. The judge gave acknowledgment to [Miller's] concern about [Carver's] drug usage but made no findings on the issue. It can only be concluded that the court made no factual inquiry concerning the best interests of the child and likely awarded custody to [Miller] because [he]

was present at trial and [Carver] was not. The North Dakota Supreme Court has held that rigid technical application should not be made of res judicata when a child's best interest is in issue. Certainly the remoteness in time of any alleged abuse may affect the weight given to such evidence. Under the circumstances of this case, I do not intend to automatically preclude admissibility of pre-July 10, 1996, conduct.

[¶ 6] After an evidentiary hearing, the court ruled the proceeding was an original custody determination. The court found sufficient evidence Miller was the perpetrator of domestic violence to raise the rebuttable presumption against awarding him custody under N.D.C.C. § 14–09–06.2(1)(j). The court, nevertheless, concluded there was clear and convincing evidence Miller would serve Michaela's best interests as custodial parent and awarded him custody. The court granted Carver supervised visitation and ordered her to pay $133 per month child support based on her imputed ability to earn the minimum wage. Carver appealed, and Miller cross-appealed.

## II

### A

[¶ 7] In his cross-appeal, Miller asserts the trial court erred in treating this proceeding as an initial custody determination. He argues the court should have treated the proceeding as a motion to modify custody, which would have required Carver to prove (1) a significant change in circumstances since the July 1996 judgment, and (2) a change in custody was in Michaela's best interests. Miller argues the July 1996 judgment was res judicata and any evidence prior to that date, including evidence he committed domestic violence, was irrelevant and inadmissible in this proceeding. Carver responds the judge who made the 1996 custody decision did not consider and evaluate the statutory factors affecting Michaela's best interests, and, therefore, the doctrine of res judicata should not be strictly applied to preclude the court from treating this proceeding as an original custody determination and from con-

sidering evidence of Miller's domestic violence.

[¶ 8] When a trial court makes an original custody decision, it must award custody based upon the single issue of the child's best interests. *Anderson v. Hensrud*, 548 N.W.2d 410, 412 (N.D.1996); *Wetch v. Wetch*, 539 N.W.2d 309, 311 (N.D.1995). When the court considers a request to modify an original custody award, however, it must consider two issues [1]: (1) whether there has been a significant change in circumstances since entry of the original custody award; and, if so, (2) whether the changed circumstances require modification of custody in the best interests of the child. *Kraft v. Kraft*, 554 N.W.2d 657, 659 (N.D.1996); *Hensrud*, at 412; *Wetch*, at 311.

[¶ 9] In *Kraft*, 554 N.W.2d at 659, the North Dakota Supreme Court held that, in considering the second stage of the two-part test for changing custody, a trial court must consider all relevant evidence, including pre-divorce conduct and domestic violence by each parent when the prior custodial decree has been based on a stipulation. *See also Wetch*, 539 N.W.2d at 312 (following "substantial persuasive authority that when the original custody decree is entered upon default or based upon a stipulation of the parties, a trial court errs by refusing to consider pre-divorce conduct on the change of custody issue"); *Hensrud*, 548 N.W.2d at 413 (stating presumption against awarding custody to perpetrator of domestic violence is founded upon weightier policy considerations than presumption that original custodial placement is correct).

1. We also note the 1997 Legislature enacted N.D.C.C. § 14–09–06.6 which, with some exceptions, precludes motions to modify custody within two years after entry of an order establishing custody. 1997 N.D. Sess. Laws Ch. 149, § 1.

2. Section 14–09–06.2(1)(j), N.D.C.C., was amended effective April 3, 1997. *See* 1997 N.D. Laws Ch. 147, § 2. Under the prior law, the presumption against awarding custody to the perpetrator of domestic violence arose with credible evidence of a single occurrence of domestic violence. Under the amended law, the presumption arises if the domestic violence consists of "one incident of domestic violence which resulted in serious bodily injury or involved the use of

[¶ 10] Here, the trial court treated this proceeding as an initial custody determination and did not require Carver to show a significant change in circumstances before analyzing the best interests of Michaela. Because the court did not require Carver to show a significant change of circumstances before considering Michaela's best interests and evidence of Miller's domestic violence, the court effectively required Miller to overcome the highest burden of proof for custody of Michaela. Under these circumstances, we need not decide whether the court erred in treating this proceeding as an initial custody decision instead of a modification, because we conclude the result is the same under either situation—the trial court's custody award is not clearly erroneous.

B

[¶ 11] A trial court's custody decision is treated as a finding of fact and will not be reversed on appeal unless clearly erroneous. *Kraft*, 554 N.W.2d at 658. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if the reviewing court, on the entire evidence, is left with a definite and firm conviction a mistake has been made. *Id.*

[¶ 12] Section 14–09–06.2(1), N.D.C.C., outlines the statutory criteria for custody decisions, and, as relevant to this case,[2] establishes a rebuttable presumption that a perpetrator of domestic violence may not be awarded custody of a child:

1. For the purpose of custody, the best interests and welfare of the child is determined by the court's consideration and

a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding." In remanding cases for consideration of the domestic violence presumption after the effective date of the 1997 amendment, the North Dakota Supreme Court has instructed trial courts to consider allegations of domestic violence in light of the 1997 amendment. *See Kasprowicz v. Kasprowicz*, 1998 ND 68, ¶¶ 16–18, 575 N.W.2d 921; *Huesers v. Huesers*, 1998 ND 54, ¶ 7, 574 N.W.2d 880; *Dinius v. Dinius*, 1997 ND 115, ¶¶ 17–20, 564 N.W.2d 300. Carver's motion for custody of Michaela was made in August 1997 and is governed by the 1997 amendment.

evaluation of all factors affecting the best interests and welfare of the child. These factors include all of the following when applicable:

\* \* \* \* \* \*

j. Evidence of domestic violence. In awarding custody or granting rights of visitation, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent's participation as a custodial parent. The court shall cite specific findings of fact to show that the custody or visitation arrangement best protects the child and the parent or other family or household member who is the victim of domestic violence. If necessary to protect the welfare of the child, custody may be awarded to a suitable third person, provided that the person would not allow access to a violent parent except as ordered by the court. If the court awards custody to a third person, the court shall give priority to the child's nearest suitable adult relative. The fact that the abused parent suffers from the effects of the abuse may not be grounds for denying that parent custody. As used in this subdivision, "domestic violence" means domestic violence as defined in section 14–07.1–01. A court may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14–07.1.

[¶ 13] In *Engh v. Jensen,* 547 N.W.2d 922, 924 (N.D.1996) (citations omitted), the North Dakota Supreme Court explained the effect of the domestic violence presumption:

When credible evidence of domestic violence is presented in a child custody dispute, such evidence "creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded sole or joint custody of a child."... We have interpreted the statutory presumption, in essence, to make domestic violence the paramount factor to consider in a custody decision.... The rebuttable presumption outweighs other factors and prevents the abusive parent from obtaining custody of the child, unless, in the case of two fit parents, the violent parent proves "by clear and convincing evidence that the best interests of the child require" that the perpetrator receive custody.... "The practical effect of the court's interpretation of the statute is that the perpetrator of domestic violence cannot be awarded custody of a child unless the other parent is found to be an unfit parent."

[¶ 14] Here, the trial court found sufficient evidence Miller was the perpetrator of domestic violence to raise the statutory presumption against awarding him custody; Miller could not excuse his actions because Carver "pushed his button;" Miller's actions were not defensive; and "[a]lthough this is a case where the court might wish for a better alternative, the evidence is clear and convincing that the best interests of Michaela would be served by maintaining her current custodial status with [Miller]."

[¶ 15] In deciding Miller had rebutted the presumption against awarding him custody, the court found Carver's "history of heavy drug usage would place Michaela in serious danger unless the court were to insist on periodic and random drug testing. Carver's chemical dependency evaluation dated June 29, 1995, recommends as much. Carver has been drug free for a period of time. However, history indicates prior relapses." The court also found:

11. Investigations by Ward County Social Services also resulted in probable cause determinations at times when Michaela was in [Carver's] care. One such incident took place in July of 1995, when [Carver] overslept after an all night party.

Michaela was heard crying. Attempts at awakening [Carver] by telephone and by activating a police siren were unsuccessful. Concern was expressed by the social worker that [Carver's] boyfriends was "hooked on methamphetamine".

12. Another incident took place on February 9, 1996. The investigator's report stated:

There were drug's throughout the home, loaded syringes laying around that the children could get into as well as other drug paraphernalia laying around. A purse was found with prescription drugs in it with [Carver's] name on them. Also found in the purse was cocaine, a syringe, scale and empty bags. Also found in the purse was a tunic which is used to tie around the arm.

13. [Carver] denied the drugs were hers and no felony charges were brought. However, based on a preponderance of evidence standard, I am not so certain that a different conclusion might be drawn. Even if [Carver] were not using drugs at the time, any parent who would expose a child to such an atmosphere is unfit-pure and simple.

[¶ 16] Although the trial court's findings did not specifically recite the statutory language that Michaela's best interests "require" Miller's participation as a custodial parent, the court's findings clearly state Carver's exposure of Michaela to a drug-related atmosphere rendered Carver "unfit-pure and simple" and Carver's history of heavy drug usage placed Michaela in "serious danger." We reject Carver's argument the court's findings reflect a customary weighing of the best interest factors. The court's findings explicitly referred to Carver's lack of fitness and the potential for "serious danger" to Michaela if Carver were awarded custody. See Engh, 547 N.W.2d at 924 (stating practical effect of domestic violence statute is violent parent cannot be awarded custody unless other parent is found unfit). We conclude the court's findings were not induced by an erroneous view of the law about the domestic violence presumption. There is evidence in this record to support the court's findings, and we are not left with a definite and firm conviction the court made a mistake in awarding Miller custody of Michaela. The trial court's custody award is not clearly erroneous.

III

[¶ 17] Carver contends the trial court erred in refusing to allow her a credit on her child support obligation for travel expenses incurred solely for exercising her visitation rights with Michaela.

[¶ 18] The trial court found Carver was attending school and had also worked as a dancer. The court decided she was "imputed to have the ability to earn at least minimum wage ... [and] shall pay $133 per month in child support." The court also ruled "[a]ll expenses relating to visitation shall be [Carver's] responsibility."

[¶ 19] When the judgment was entered, Carver was a nursing student in Bismarck and Miller lived near Minot. Carver claims she is incurring at least $246 per month in transportation expenses (880 miles per month times $.28 per mile) to exercise visitation with Michaela. Carver argues she is entitled to deduct $246 from her imputed net income of $675 to arrive at a revised net income of $429, which, under the child support guidelines, results in a child support obligation of $56 per month.

[¶ 20] Section 14-09-09.7(3), N.D.C.C., creates a rebuttable presumption that the amount of child support required under the child support guidelines is the correct amount. Under N.D. Admin. Code § 75-02-04.1-09(2), the presumptively correct amount is rebutted only if a "preponderance of the evidence establishes that a deviation from the guidelines is in the best interests of the supported children and ... (i)[t]he reduced ability of the obligor to provide support due to travel expenses incurred solely for the purpose of visiting a child who is the subject of the order." A trial court's determination of child support is a finding of fact and will not be overturned on appeal unless it is clearly erroneous. Dalin v. Dalin, 545 N.W.2d 785, 788 (N.D.1996). A party seeking a deviation from the presumptive-

ly correct guideline amount of child support has the burden of proof. *Id.*

[¶ 21] We are not left with a definite and firm conviction the trial court made a mistake in refusing to deviate from the presumptively correct guideline amount of child support by allowing Carver credit for travel expenses for exercising visitation with Michaela. We conclude the trial court's child support award is not clearly erroneous.

## IV

[¶ 22] Carver argues the trial court clearly erred in awarding her "reasonable supervised visitation upon reasonable advance notice." She argues because Miller did not request supervised visitation at trial, and given the animosity between the parties, the court clearly erred in ordering supervised visitation and declining to enter a specific visitation order.

[¶ 23] A trial court's decision on visitation is a finding of fact and will not be reversed on appeal unless clearly erroneous. *Zuger v. Zuger*, 1997 ND 97, ¶ 36, 563 N.W.2d 804. In deciding custody, the court found Carver's exposure of Michaela to a drug-related atmosphere rendered Carver "unfit-pure and simple" and Carver's history of heavy drug usage placed Michaela in "serious danger." As we have previously concluded, those findings are not clearly erroneous. The trial court's obvious concerns about Carver's fitness to be the custodial parent militate in favor of supervised visitation. The court, however, did not outline any specific guidelines for implementing supervised visitation, including who would supervise the visitation and how and when it would occur. There is undoubtedly animosity between Carver and Miller, and we believe appropriate visitation guidelines are necessary to ensure that animosity does not preclude or hinder meaningful visitation. We therefore remand for the court to set specific guidelines for implementing supervised visitation.

## V

[¶ 24] We affirm the trial court's custody, child support and visitation decisions, and we remand for implementation of appropriate guidelines for supervised visitation.

[¶ 25] WILLIAM F. HODNY, Surrogate Judge, and RALPH R. ERICKSON and GAIL HAGERTY, District Judges, concur.

