**GOFOR OIL, INC., a North Dakota corporation, Plaintiff and Appellant,**

v.

**STATE of North Dakota, and Heidi Heitkamp, as North Dakota State Tax Commissioner, Defendants and Appellees.**

Civ. No. 870371.

Supreme Court of North Dakota.

July 5, 1988.

McGee, Hankla, Backes & Wheeler, Ltd., Minot, for plaintiff and appellant; argued by Russel G. Robinson.

Jo Marie Noack (argued), State Tax Dept., Bismarck, for defendants and appellees.

ERICKSTAD, Chief Justice.

Plaintiff–Appellant Gofor Oil, Inc., appeals from a judgment granting summary judgment to the State of North Dakota and Heidi Heitkamp, North Dakota State Tax Commissioner.

Gofor Oil owns the entire working interest in several oil wells collectively referred to as the "East Flaxton–Madison" (EFM) unit. The focus of this appeal is whether or not the oil produced from the East Flaxton–Madison unit was properly subjected to the "oil extraction tax" from January 1, 1981, to August 1, 1986. We conclude the EFM unit was properly taxed under the oil extraction tax and therefore affirm the judgment.

At the general election in November of 1980, North Dakota voters approved Initiated Measure No. 6.[1] Measure No. 6 provided for a six and one-half percent tax on the value of oil extracted from the earth. The Forty–Seventh Legislative Assembly amended parts of Initiated Measure No. 6 and codified it in Chapter 57–51.1 of the North Dakota Century Code. Section 57–51.1–02, N.D.C.C., reads in relevant part:

---

1. Article III of the North Dakota Constitution reserves to the people "the power to propose and enact laws by the initiative."

"*57–51.1–02. Imposition of oil extraction tax.* There is hereby imposed an excise tax, to be known as the 'oil extraction tax', upon the activity in this state of extracting oil from the earth, and every owner, including any royalty owner, of any part of the oil extracted shall be deemed for the purposes of this chapter to be engaged in the activity of extracting that oil. The rate of tax shall be six and one-half percent of the gross value at the well of the oil extracted...." (1987 Supp.).

However, section 57–51.1–03(2), N.D.C.C., exempts oil "from a stripper well property" from the oil extraction tax. In 1981 "stripper well property" was defined as follows:

" 'Stripper well property' means a 'property' whose average daily production of oil, excluding condensate recovered in nonassociated production, per well did not exceed ten barrels per day during any preceding consecutive twelve-month period beginning after December 31, 1972. Wells which did not actually yield or produce oil during the qualifying twelve-month period, including disposal wells, dry wells, spent wells, and shut-in wells, are not production wells for the purpose of determining whether the stripper well property exemption applies." § 57–51.1–01(5), N.D.C.C. (1981).

Thus, an oil well is exempt from the six and one-half percent tax if the "average daily production" from that oil well does not exceed ten barrels per day.

At the heart of this appeal is the meaning of "average daily production." The term is defined in section 57–51.1–01(1), N.D.C.C.:

" 'Average daily production' of a well means the qualified maximum total production of oil from the well during a calendar month period divided by the number of calendar days in that period; and 'qualified maximum total production' of a well means that the well must have been maintained at the maximum efficient rate of production as defined and determined by rule adopted by the indus-

trial commission in furtherance of its authority under chapter 38–08."

From the effective date of Initiated Measure No. 6 in January of 1981 through July of 1986 the North Dakota Industrial Commission followed an "informal policy" of determining an oil well's "maximum efficient rate." Adhering to this "informal policy," the Industrial Commission determined that "average daily production" should be ascertained by dividing the total annual production in barrels by the total number of days of well operation per year. Pursuant to this informal policy the Industrial Commission calculated that Gofor's EFM unit produced 16,192 barrels over 1,155 producing days in 1973. Thus, the EFM unit was apparently producing 14.02 barrels per day per well under the Industrial Commission's informal policy of computing average daily production.

As this policy was in effect from the beginning of the oil extraction tax on January 1, 1981, up through July of 1986, the EFM unit was not eligible for stripper well status and was therefore subject to the oil extraction tax. This fact eluded the attention of the Tax Commissioner until March of 1985, however. After discovering the EFM unit was subject to the oil extraction tax and that no tax payments had been received, the Tax Commissioner wrote several letters to Gofor explaining that the EFM unit was subject to the oil extraction tax. The Tax Commissioner ultimately issued a notice of assessment to Amoco Production Company (Amoco), the purchaser of the oil extracted by Gofor and Amoco ultimately paid $172,641 in oil extraction taxes for the period beginning on January 1, 1981, and ending on August 31, 1986.

On June 4, 1986, the Industrial Commission adopted an administrative rule defining "maximum efficient rate," pursuant to the North Dakota Administrative Agencies Practice Act [2] which became effective August 1, 1986. Codified at section 43–02–08–01(3) of the North Dakota Administrative Code, the term "maximum efficient rate" is now defined as follows:

**2.** *See* Chapter 28–32, N.D.C.C.

"3. 'Maximum efficient rate' means the maximum economic rate of production of oil which can be sustained under prudent operations, using sound engineering practices, without loss of ultimate recovery."

Using this definition, the Industrial Commission now computes "average daily production" by dividing the total annual production in barrels by the number of days in a year (365 or 366). Thus, the Industrial Commission has now changed the denominator from actual well-producing days to the number of days in a year. Changing the denominator from actual well-producing days to the number of days in the year (365 or 366) has the effect of lowering the average daily production figure. The deputy enforcement officer for the Industrial Commission explains that the new definition was adopted to "assist North Dakota's depressed oil industry. Under [the new definition], many additional wells will qualify for stripper well property status, and as a consequence thereof, such wells will be exempt from the oil extraction tax."

On January 2, 1986, Gofor submitted an application for stripper well property status for the EFM unit as of January 1, 1981. The Industrial Commission denied Gofor's application on January 13, 1986, based on the Commission's informal policy of computing average daily production. Realizing that a new definition became effective on August 1, 1986, Gofor submitted an amended application for a stripper well property determination to the Industrial Commission on August 18, 1986. This time the Indus-trial Commission granted the application based on its new definition.[3]

Gofor then filed a complaint in district court praying for a refund of the oil extraction taxes paid for the period beginning January 1, 1981, to August 31, 1986.[4] The district court upheld the tax assessment for the above period by concluding that the new definition of maximum efficient rate formally adopted by the Industrial Commission should not be applied retroactively to pre-empt the Industrial Commission's informal policy.

Gofor appealed the district court's judgment on two issues: (1) the Industrial Commission's informal policy is violative of section 57–51.1–01(1), N.D.C.C.; (2) in the alternative, the Industrial Commission's new policy under which the EFM unit qualifies as a stripper well should be applied retroactively to January 1, 1981, when the oil extraction tax became effective. We reject both of Gofor's arguments.

The definition of "average daily production" in section 57–51.1–01(1) is somewhat complex. The section defines the term "average daily production" by making reference to two other terms of art: "qualified maximum total production" and "maximum efficient rate of production." The next clause of this section grants the Industrial Commission the authority to define "maximum efficient rate of production," a term which partially defines average daily production. Gofor argues the Industrial Commission has improperly interpreted this section:

"N.D.C.C. 57–51.1.–01(1) states that ' "average daily production" of a well

3. Gofor did not appeal the Industrial Commission's initial determination that the EFM unit was not eligible for stripper well status. This initial determination was based on the Industrial Commission's informal policy which Gofor now complains of. The Tax Commissioner asserts Gofor should have objected to the Commission's informal policy after stripper well status was denied.

Section 38–08–14, N.D.C.C., requires any person adversely affected by an order of the Industrial Commission to file a notice of appeal within 30 days to the Industrial Commission in order to perfect an appeal. Gofor did not file a notice of appeal but instead submitted an amended application on August 18, 1986. Gofor did not raise the issue that the Industrial Commission's informal policy improperly interprets § 57–51.1–01(1), N.D.C.C., until it brought suit in district court to contest the assessment of taxes.

Gofor's failure to appeal the Industrial Commission's initial determination is an additional ground for affirming the judgment. Appealing stripper well property determinations is now governed by Chapter 43–02–08 of the North Dakota Administrative Code.

4. It is undisputed that Gofor is entitled to a refund of the extraction taxes paid for August of 1986.

means the qualified maximum total production of oil from the well during a calendar month period divided by the number of calendar days in that period....' If those words are to be understood in their ordinary sense, it would require any computation of qualified maximum total production, regardless of how that is determined, to be made by dividing a calendar month's production by the number of calendar days in that month."

This argument ignores the latter part of section 57–51.1–01(1), N.D.C.C., which delegates to the Industrial Commission the authority to determine the maximum efficient rate of production which is essential to the determination of the qualified maximum total production, and ultimately, to the determination of the average daily production.

Administrative rule-making power is predicated on the theory that in certain subjects of governmental regulation public interest is better served by delegating a part of detailed lawmaking to expert administrators who are especially familiar with the subject the legislature has directed them to regulate. As we said in *Ferch v. Housing Authority of Cass County*, 79 N.D. 764, 59 N.W.2d 849, 862 (1953): "There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and must therefore be a subject of inquiry and determination outside of the halls of legislation." While an administrative agency may not exceed statutory authority or supersede a statute, *Moore v. North Dakota Workmen's Compensation Bureau*, 374 N.W.2d 71, 74 (N.D.1985); *Steele v. North Dakota Workmen's Compensation Bureau*, 273 N.W.2d 692, 701 (N.D.1978), we believe the Industrial Commission has stayed within the boundaries of its delegated authority.

■ The North Dakota Legislature has imposed a wide array of guidelines on persons who extract oil from the earth. The Legislature has also delegated some rule-making authority for regulating oil producers to the North Dakota Industrial Commission, however. When the subject matter is of a technical nature, the expertise of the administrative agency is entitled to respect. *Triangle Oil Field Services, Inc. v. Hagen*, 373 N.W.2d 413, 415 (N.D. 1985). In this case involving the computation of "average daily production" and particularly keeping in mind the factor of the maximum efficient rate of an oil well, we do not believe the Industrial Commission exceeded its statutory authority in defining "average daily production" as the total annual production of a well in barrels divided by the number of days the well actually produced.

■ Gofor argues in the alternative, however, that the Industrial Commission's new definition of "average daily production" should be applied retroactively[5] to confer stripper well status on the EFM unit on January 1, 1981. Section 57–51.1–01(1) clearly gives the Industrial Commission the authority to define "maximum efficient rate." The term must be "as defined and determined by rule adopted by the Industrial Commission in furtherance of its authority under Chapter 38–08." Gofor argues that since a maximum efficient rate can only be defined by an "adopted" rule, the rule the Industrial Commission adopted in June of 1986 must be applied back to 1981 when the legislature directed the Industrial Commission to adopt a rule defining maximum efficient rate. Gofor argues section 57–51.1–01(1), N.D.C.C., "infers that whatever rule would be *formally* adopted by the Industrial Commission would be effective from the effective date of the statute." [Emphasis added.] Gofor's argument to "infer" retroactive application is directly contrary to our interpretation of section 1–02–10, N.D.C.C., which reads:

"*1–02–10. Code not retroactive unless so declared.* No part of this code is retroactive unless it is expressly declared to be so."

---

5. Gofor initially insists its argument is one of correct statutory interpretation rather than an argument for retroactive application of § 57–51.1–01(1), N.D.C.C.

In *Reiling v. Bhattacharyya*, 276 N.W.2d 237 (N.D.1979) we construed section 1-02-10, N.D.C.C., stating:

"All statutes enacted by the legislature are to be applied prospectively, *i.e.*, they are to be applied only to causes of action that arise after the effective date of the statute, unless the legislature clearly expresses that they are to be applied retroactively." [Footnote omitted.] 276 N.W.2d at 240-41.

We further noted in *Reiling* that by giving statutes prospective effect only, the "legislature will be given notice that it must specifically state that a statute is to apply retroactively if the legislature desires it to apply retroactively." [Footnote omitted.] 276 N.W.2d at 240. *See also, State v. Kaufman*, 310 N.W.2d 709, 715 (N.D. 1981). We declared in *Reiling* that prospective application applies to "substantive" and "procedural" statutes alike.[6]

Although section 57-51.1-01(1), N.D.C.C., clearly directs the Industrial Commission to adopt a rule, it does not expressly impose a time limit or direct that the rule ultimately adopted have retroactive application. We have noted that section 1-02-10, N.D.C.C., represents a canon of statutory construction. *State v. Cummings*, 386 N.W.2d 468, 471 (N.D.1986). This Court has applied principles of statutory construction to rules of evidence, *Keyes v. Amundson*, 343 N.W. 2d 78, 83 (N.D.1983), and we believe an administrative rule, which is a derivative of statute, may be interpreted with reference to well-established principles of statutory construction.[7] The language of section 43-02-08-01, N.D.A.C., does not reveal an express or implied intent to retroactively apply the new definition of "maximum efficient rate." Consequently, the formal rule adopted by the Industrial Commission in

June of 1986 and made effective on August 1, 1986, should not be applied retroactively.

The judgment granting the Tax Commissioner's cross-motion for summary judgment is affirmed.

GIERKE and LEVINE, JJ., and VERNON R. PEDERSON and DOUGLAS B. HEEN, Surrogate Justices, concur.

VERNON R. PEDERSON, and DOUGLAS B. HEEN, Surrogate Justices, sitting in place of VANDE WALLE and MESCHKE, JJ., disqualified.

---

6. An exception to the general rule that all statutes apply prospectively only unless a contrary intention is clearly expressed may be found in *State v. Cummings*, 386 N.W.2d 468, 472 (N.D. 1986), where we found a "compelling inference" that the Legislature intended to apply a penal statute retroactively. However, *Cummings* expressly recognized that it was creating an "exception" to the general rule of prospective application only in the case of "ameliorating penal legislation." *Id.*

7. Other states have recognized that the principles of statutory construction generally apply to interpretation of rules and regulations of administrative agencies. *See Messina v. Iowa Dept. of Job Service*, 341 N.2d 52, 56 (Iowa 1983); *Hartpence v. Youth Forestry Camp*, 325 N.W.2d 292, 295 (S.D.1982); *Law Enforcement Standards Board v. Village of Lyndon Station*, 101 Wis.2d 472, 305 N.W.2d 89, 97 (1981).