1998 ND 212

**Sheila Marie SCHMALTZ, Plaintiff and Appellant,**

v.

**Thomas Joseph SCHMALTZ, Defendant and Appellee.**

**Civil No. 980038**

Supreme Court of North Dakota.

Dec. 22, 1998.

Alisha L. Ankers, Fargo, ND, for plaintiff and appellant.

John D. Bullis, of Lies & Bullis, Wahpeton, ND, for defendant and appellee.

MARING, Justice.

[¶ 1] Sheila Schmaltz appealed from a divorce decree, protesting the trial court's custody award, property division, and treatment of visitation expenses. We affirm.

[¶ 2] Thomas and Sheila Schmaltz were married in 1982. They have three daughters of their marriage, Anne Marie, age 13, Alexa Michele, age 10, and Amy Jo, age 5. At the time of the marriage, this couple lived near Rugby where Thomas farmed. Sheila, who obtained her bachelor's degree before the marriage, worked for Pierce County Social Services.

[¶ 3] The family moved to Fargo in 1986 where Sheila accepted a position with a medical assistance screening team. Sheila attended post-graduate courses on weekends and in 1995 obtained her master's degree. At the time of the divorce, Sheila was a supervisor with PATH (Professional Association of Treatment Homes) earning an annual income of $43,168.08.

[¶ 4] Thomas has a high school education. He initially found employment in Fargo weatherizing low-income homes. In 1988, he accepted a job with North Dakota State University in the swine unit and later transferred to the meat lab. In 1996, Thomas accepted a job at the zoo in Wahpeton. At the time of trial, he had an annual income of $18,140, which included $2,000 of income from a catering business.

[¶ 5] The parties built a home in Harwood, north of Fargo, and resided there as a family until January 1997, when Thomas left the home to reside in Wahpeton. By that time the marriage had broken down, and Sheila filed for divorce. The trial court awarded custody of the children to Thomas with liberal visitation for Sheila, divided the marital property, and ordered Sheila to pay child support of $927 per month for nine months of each calendar year, excluding the months of December, June, and July.[1] Sheila appealed.

## Custody

[¶ 6] Sheila argues the trial court erred in awarding custody of their three daughters to Thomas. In *Reimche v.*

*Reimche*, 1997 ND 138, ¶ 12, 566 N.W.2d 790, we summarized our process of limited review of a trial court's custody award under N.D.R.Civ.P. 52(a):

> In a divorce proceeding, the trial court must award custody of the minor children based upon a determination of the best interests and welfare of the children. The trial court is vested with substantial discretion in matters of custody and in the determination of what is in the best interests of the children. A trial court's custody determination is a finding of fact that will not be set aside on appeal unless it is clearly erroneous. A trial court's findings of fact are presumptively correct. The complaining party bears the burden of demonstrating on appeal that a finding of fact is clearly erroneous. In reviewing findings of fact, we must view the evidence in the light most favorable to the findings. A choice between two permissible views of the evidence is not clearly erroneous. Simply because we might view the evidence differently does not entitle us to reverse the trial court. A finding of fact is clearly erroneous only if the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. (Citations omitted)

[¶ 7] Upon considering the relevant factors for awarding custody under N.D.C.C. § 14-09-06.2, the trial court concluded it would be in the children's best interests to award Thomas custody with very liberal visitation for Sheila, including three weekend visitations per month and two months of visitation in the summer. Immediately following the trial, the court summarized its custody analysis in findings from the bench:

> [T]hese parties do love their children. The children are the beneficiaries of that, they are thriving, they're well adjusted, they're bright, they're interested in life. I visited with them, they couldn't be more delightful. And I think that is a credit to both parents, no matter how diverse they are in their goals and what they're looking for. In fact, they did that right.

---

1. On June 10, 1998, the trial court entered a revised child support order requiring Sheila to pay $893 per month for nine months of each calendar year.

. . . .

In this marriage, sometime during the course of this marriage, the mother of those children took on the role of major breadwinner. Dad took on a different role. His was more of a Mr. Mom kind of role.

There isn't any controversy about this evidence. He did the majority of the cooking, he was there most of the time, he provided a lot of the stimulation for the kids in the activities they were involved in.

. . . .

These girls want to live with their father. That, in combination with his function of being the primary caretaker, I think, makes that decision for me.

In its written findings, the trial court provided additional explanation for its custody decision:

Both parties have an equal capacity to give the children love, affection, and guidance; however, [Thomas] has the greater disposition to do so, having been the children's primary caretaker while [Sheila] has been required to spend considerable time developing her career . . .

. . . throughout the marriage, [Sheila] has invested heavily in her career and it was [Thomas] who assumed the role of being the secondary wage earner, but who was also the party responsible for the majority of the children's day-to-day care and supervision. In addition, the Court finds that the emotional bonds existing among the three children are very strong and the Court finds it to be in the children's best interests that they remain together.

[¶ 8] The court found both parties of equal moral fitness. Sheila complains the court did not give adequate consideration to Thomas's unfitness of character because he had an affair with a coworker at the Wahpeton zoo. Thomas admits he had an intimate relationship with a coworker, but he testified their relationship did not become intimate until after the parties separated and Sheila had filed for divorce. We are not convinced the trial court gave inadequate consideration to this factor. *See Foreng v. Foreng,* 509 N.W.2d 38, 40 (N.D.1993) ("we refuse to adopt [the] suggestion that evidence of extra-marital relationships, per se, is an irrefutable indication of moral unfitness").

[¶ 9] Sheila complains the trial court should have given greater consideration to the opinion of the court-appointed guardian ad litem, who concluded Sheila should have custody of the children. By statute, the trial court is vested with the authority to award custody to the parent who will promote the best interests and welfare of the child. N.D.C.C. § 14–09–06.1; *Schneider v. Livingston,* 543 N.W.2d 228, 233 (N.D. 1996). "The court cannot delegate this responsibility to a guardian ad litem or other independent investigator. The weight assigned to a guardian ad litem's testimony and recommendation is within the trial court's discretion, and the court does not have to, nor should it, regard a guardian ad litem's testimony and recommendation as conclusive." (Citations omitted). *Id.* The guardian ad litem found both parents to have equal ability in providing for the needs of their children. He concluded both parents "have provided a stable environment for their children" and "the stability of the children is first priority with both parents." On the issue of moral fitness, the guardian found no problems with Sheila and none with Thomas, other than noting Thomas's involvement with the coworker may have occurred prior to the parties' separation. In essence, the guardian concluded both parents are fit and capable of raising these children. Nevertheless, the guardian concluded Sheila should get physical custody of the children with liberal visitation for Thomas. The guardian ad litem further recommended "the children remain together." The trial court's findings mirror most of those in the guardian ad litem's report.

[¶ 10] The guardian ad litem's recommendation is not accompanied by any explanation why Sheila is more worthy of custody than Thomas other than the children have lived in Harwood, North Dakota, since 1988. The trial court explained that Thomas's daily care of the children, his close bond with them, and the children's express preference to reside with Thomas tipped the scales in favor of awarding custody to him. While the trial

court's decision disagreed with the guardian ad litem's custody recommendation, we are not convinced the court failed to adequately consider the report or erred in exercising its judgment.

[¶ 11] Sheila complains the trial court did not give adequate consideration to the stability of the family home in awarding custody to Thomas. The trial court and the guardian ad litem found both of these parents have provided stability in the lives of these girls and each would be capable of providing stability for them in the future.

[¶ 12] Based upon our review of the record evidence, we are not left with a definite and firm conviction the trial court made a mistake in awarding custody. The trial judge analyzed the relevant factors and cogently expressed her reasons for awarding custody to Thomas. We conclude the custody award is not clearly erroneous.

### Visitation Expenses

[¶ 13] Sheila argues the trial court erred in awarding visitation, because it failed to adequately consider the transportation costs. The child support guidelines permit a deviation from the scheduled child support amount if the court finds a "reduced ability of the obligor to provide support due to travel expenses incurred solely for the purpose of visiting a child who is the subject of the order." N.D. Admin. Code § 75–02–04.1–09(2)(i). The trial court reduced Sheila's scheduled child support obligation by $2,781 per year expressly "because of the amount of visitation ordered herein."

[¶ 14] It is impermissible for a trial court to abate an obligor's child support obligation for temporary periods when the children reside with the obligor. N.D. Admin. Code § 75–02–04.1–02(2); *Edwards v. Edwards*, 1997 ND 94, ¶ 15, 563 N.W.2d 394. Consequently, we assume the trial court's intent was not to abate Sheila's support obligation for temporary periods in which the children are visiting with her, but, instead, to reduce her support obligation in consideration of the expenses, including transportation costs, associated with the frequent visitations. The town of Harwood, where Sheila

resides, is about a one-hour drive from Wahpeton, where Thomas and the children reside. We find no error by the court.

### Property Division

[¶ 15] Sheila argues the property division is inequitable. Under N.D.C.C. § 14–05–24 "[w]hen a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper." In reviewing a property division on appeal, we start with the view that marital property should be equally divided and, while the division need not be exactly equal to be equitable, the trial court must explain any substantial disparity. *Christmann v. Christmann*, 1997 ND 209, ¶ 6, 570 N.W.2d 221. The trial court's determinations on valuations and division of property are treated as findings of fact and will be reversed on appeal only if they are clearly erroneous. *Wilhelm v. Wilhelm*, 1998 ND 140, ¶ 11, 582 N.W.2d 6.

[¶ 16] The parties have a negative net worth. The total value of the marital assets is $161,242.94. Their total debt is $168,050.18, resulting in a negative net worth of $6,807.24. The court awarded Sheila property valued at $143,262.94 and debt of $157,933.70, resulting in a negative net distribution to her of $14,670.76. The court awarded Thomas assets valued at $17,980 and debt of $10,155.18, resulting in a positive net distribution to him of $7,824.82.

[¶ 17] The court found Sheila has substantially greater earnings than Thomas. She earns about $25,000 more each year than Thomas. Sheila also earned her master's degree during the marriage, while Thomas has only a high school education. The trial court did not, however, award spousal support to either party. We do not consider issues of property division and spousal support separately or in a vacuum, but rather we deal with those issues together, especially when there is a large difference in earning power between the spouses. *Wald v. Wald*, 556 N.W.2d 291, 296 (N.D.1996); *Gronland v. Gronland*, 527 N.W.2d 250, 253 (N.D.1995).

In view of the disparity between Thomas and Sheila's earning ability, we are not left with a definite and firm conviction the trial court erred in dividing the marital property. We conclude, therefore, the trial court's division of marital property is not clearly erroneous.

[¶ 18] Judgment affirmed.

[¶ 19] VANDE WALLE, C.J., and NEUMANN, SANDSTROM, and KAPSNER. JJ., concur.