2001 ND 43

**Bryan C. TIBOR, Plaintiff and Appellee,**

v.

**Kathleen E. TIBOR, n/k/a Kathleen E. Zich, Defendant and Appellant.**

No. 20000040.

Supreme Court of North Dakota.

March 5, 2001.

**14**

Gregory I. Runge, Bismarck, ND, for plaintiff and appellee.

Steven L. Latham, Wheeler Wolf, Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Kathleen Zich appeals from the trial court's Amended Judgment as to Visitation Schedule and Child Support which granted the children's father, Bryan Tibor, a fixed seven-week summer visitation and a downward deviation from the child support guidelines based on his anticipated travel expenses for purposes of visiting his children. We conclude the trial court's extended summer visitation schedule of seven weeks is not clearly erroneous. The trial court was also not clearly erroneous in finding the child support guideline presumption was rebutted by evidence of a reduced ability to make child support payments based on court-ordered visitation travel expenses. However, the trial court erred in allowing a downward deviation from the child support guidelines based on discretionary visitation travel expenses, as only court-ordered visitation travel expenses may rebut the child support guidelines. Therefore, we affirm the trial court's decision on visitation, but reverse in part on the rebuttal of the presumptively correct child support guidelines, remanding for the trial court to properly calculate the downward deviation from the guidelines in accordance with this opinion.

I

[¶ 2] Zich and Tibor were married in 1986 and have three children who were born in 1986, 1989, and 1992. The parties were divorced in October 1995, and judgment was entered on their stipulation, granting the parties joint legal and physical custody of the children and restricting the parties' residence to North Dakota for five years. Both parties remarried after the divorce. In 1996, after Zich's husband lost his job through company downsizing, Zich requested the court's permission to move out of state with the children because her husband received a job offer in Georgia. The trial court denied Zich's motion to relocate. On appeal, we reversed and remanded, directing the trial court to grant the relocation motion and to restructure visitation so as to preserve and foster the children's relationship with their father. *Tibor v. Tibor*, 1999 ND 150, ¶ 1, 598 N.W.2d 480.

[¶ 3] On December 6, 1999, the trial court held a hearing to establish a visitation schedule. The court entered its order awarding Tibor eight weeks of summer visitation from May 31 to July 31; one week during Christmas; and alternating visitation during Easter, Thanksgiving, and spring break. The court also allowed Tibor to visit the children any time in Georgia, provided he gives Zich one week's notice. The court ordered the parties to split equally the children's travel costs for visitation in North Dakota, but Tibor would have to pay his own costs if he visited the children in Georgia.

[¶ 4] Subsequently, Zich moved the trial court to reconsider its order, arguing that it would be too expensive to alternate the one-day Easter holiday and that the eight-week summer visitation in North Dakota would not allow the children sufficient time to get ready for the start of school in Georgia. Tibor's reply agreed to eliminating the Easter rotation, requested the children every spring break, requested a reduction in his child support by the amount of visitation travel expenses, and requested that he take full responsibility for the travel arrangements for purposes of visiting the children. Tibor included an affidavit projecting his anticipated travel expenses. To rebut Tibor's estimated expenses, Zich provided an affidavit of actual costs she incurred for the children's travel to visit Tibor at Christmas. Zich opposed the child support reduction because at that date Tibor had not incurred any travel expenses, and Zich alleged the expenses Tibor provided were exaggerated. Zich again offered to pay half of the travel expenses, as the trial court had previously ordered.

[¶ 5] On February 3, 2000, the trial court entered an Amended Judgment as to Visitation and Child Support, eliminating Easter visitations; shortening summer vacation to seven weeks from May 31 to July 24; alternating Christmas, Thanksgiving, and spring break; allowing Tibor to visit any time in Georgia with one week's no-

tice; and ordering Tibor to make all travel arrangements and pay all travel expenses incurred by both Tibor and the children for visitation purposes. In addition, the trial court granted Tibor a downward deviation from the child support guidelines because (1) a preponderance of the evidence showed rebuttal of the child support presumption would be in the children's best interests; (2) Tibor would be unable to pay child support and the visitation travel expenses; and (3) calculating a reduction in child support only after travel expenses were actually incurred would lead to an unwieldy process of annual hearings. The trial court calculated Tibor's child support deviation based on "unrebutted evidence" at the December 6, 1999 hearing that Tibor's annual travel expenses would be $15,583. After the trial court deducted items from Tibor's anticipated expenses, such as tickets for his wife to accompany him to Georgia, rental car costs, and travel costs for alternating spring break rather than giving Tibor every spring break, the annual amount totaled $11,372. On that basis, the trial court reduced Tibor's child support obligation of $995 per month to $50 per month for three children, but continued an additional $200 per month in arrearages until fully paid.

## II

[¶ 6] Zich argues the trial court erred in awarding Tibor seven weeks of summer visitation because it is not in the best interests of the three children.

[¶ 7] Under N.D.C.C. § 14–05–22(2), the trial court shall grant visitation rights which "will enable the child and the noncustodial parent to maintain a parent-child relationship that will be beneficial to the child, unless the court finds ... visitation is likely to endanger the child's physical or emotional health." The decision of the trial court regarding visitation is a finding of fact which will not be reversed on appeal unless the finding is clearly erroneous under N.D.R.Civ.P. 52(a). *Schiff*

*v. Schiff*, 2000 ND 113, ¶ 10, 611 N.W.2d 191. A finding of fact is clearly erroneous only if induced by an erroneous view of the law; if no supporting evidence exists; or if, after reviewing the entire evidence, the appellate court has a definite and firm conviction the trial court made a mistake. *Id.*

[¶ 8] Visitation is not merely a privilege of the noncustodial parent, but also a right of the children and is presumed to be in the children's best interests. *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 21, 603 N.W.2d 896. The primary purpose of visitation is not to promote the wishes or desires of the parents, but to promote the best interests of the children. *Moilan v. Moilan*, 1999 ND 103, ¶ 29, 598 N.W.2d 81.

[¶ 9] Visitation of the noncustodial parent is a critical factor in determining whether a custodial parent will be allowed to move the children out of state. *See Stout v. Stout*, 1997 ND 61, ¶ 34, 560 N.W.2d 903. A trial court's relocation decisions are based on a four-factor analysis when determining whether a custodial parent's proposed move is in the best interests of the children. *Id.* The fourth factor of the *Stout* analysis, specifically pertaining to visitation of the noncustodial parent after a relocation, was restated in *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144:

> The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

[¶ 10] We have concluded that a noncustodial parent's right to maintain and develop a relationship with his or her children after removal from the state can be satisfied by modifying the visitation schedule to include less frequent but more extended periods of time. *Stout*, 1997 ND 61, ¶ 31, 560 N.W.2d 903. When there is a long distance between the homes of the noncustodial and custodial parents, we have approved visitation schedules providing less frequent, but extended, visitation periods to preserve the noncustodial parent's ability to foster relationships with the children. *Schiff*, 2000 ND 113, ¶ 27, 611 N.W.2d 191. In such circumstances, extended visitation during the summer months may be the only feasible method of facilitating visitation, from the standpoint of transportation and economics. *Love v. DeWall*, 1999 ND 139, ¶ 13, 598 N.W.2d 106.

[¶ 11] Zich argues the trial court erred in granting Tibor a fixed seven weeks of summer visitation because such a schedule leaves insufficient time for (1) the children's extracurricular and church summer activities; (2) relationships with friends, extended family, and the custodial parent; and (3) preparations to return to school in the fall. Zich testified a flexible six weeks of uninterrupted summer visitation is more appropriate, citing our statement when we approved her relocation: "Zich offered a very generous alternative visitation schedule, including six weeks of uninterrupted visitation in the summer . . . ." *Tibor v. Tibor*, 1999 ND 150, ¶ 25, 598 N.W.2d 480. Zich testified the children participate in Brownies, Girl Scouts, church group, music lessons, and soccer, some of which have ongoing summer activities such as camping trips. Zich testified Tibor has not named any specific summer activities he had planned for the children in North Dakota. Zich testified the trial court's order allows the children only 12 days of free time at the beginning of summer vacation to spend with their friends or to participate in local activities. After returning from their summer visitation to North Dakota, the children have only 14 days to reestablish themselves at home, go school shopping, and reacquaint themselves with their friends before school starts. Zich testified

the children have no family time during the summer months and no time to spend with extended family.

[¶ 12] Tibor testified Zich has 41 full weeks, including weekends, for family time, as well as additional breaks. Furthermore, the children have been seeing their extended family in Georgia on a monthly basis. Tibor testified that because Zich has the children 80% of the time, there is barely enough time for the children to spend with their larger extended family and friends in North Dakota. Tibor testified the children also should be entitled to opportunities to participate in summer activities in North Dakota. Tibor testified that leaving visitation open ended and at the discretion of the parties will only cause more court hearings because the parties have never been able to get along.

[¶ 13] The trial court reduced the summer visitation from eight weeks to seven weeks, reasoning this amount of time was "necessary to make up for time during the rest of the year [Tibor] is unable to see the children." The trial court stated:

These dates will allow the children some time at the end of school and at the start of school to do what they need to do. The children have the rest of the year to spend with their extended family in Georgia. Any less time would not allow the children enough time to participate in activities in either Georgia or North Dakota. The dates are set because the parties can't agree the sun comes up in the east. The fewer opportunities for the parties to negotiate and disagree the better.

[¶ 14] On the basis of this record, we cannot say the trial court's order for seven weeks of summer visitation is clearly erroneous. The trial court reduced the visitation by one week in order to allow the children to participate in summer activities in either Georgia or North Dakota. *See Moilan*, 1999 ND 103, ¶¶ 31–32, 598 N.W.2d 81 (reducing visitations in the children's best interests because the visits caused minor difficulties for the children at home and school). Given that relocation of the custodial parent with the children is predicated in large part on the noncustodial parent's right to maintain a relationship with the children by "less frequent but more extended periods of time," *Stout*, 1997 ND 61, ¶ 31, 560 N.W.2d 903, we cannot say the trial court's seven-week visitation schedule was clearly erroneous or not in the best interests of the children. *See also Peterson v. Peterson*, 555 N.W.2d 359, 363 (N.D.1996) (concluding eight weeks of summer visitation was not clearly erroneous).

### III

[¶ 15] Zich argues the trial court erred in finding the presumptively correct child support guidelines were rebutted and in granting a downward deviation from the guidelines based on visitation travel expenses calculated before actual travel costs were incurred and based on visitations which were not court ordered.

[¶ 16] Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and in some areas matters of discretion subject to the abuse of discretion standard of review. *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215. A finding of fact is clearly erroneous if induced by an erroneous view of the law, if no evidence supports it, or if we are left with a definite and firm conviction on the entire record that the trial court made a mistake. *Id.* A trial court errs as a matter of law when it fails to make required findings or required findings are not intelligible. *Id.*

[¶ 17] The presumptively correct child support guidelines may be rebutted by evidence establishing a reduced ability to provide support due to travel expenses incurred solely for the purpose of visiting a child and establishing that a deviation is in the best interests of the

child. *See* N.D.C.C. § 14–09–09.7(3); N.D. Admin. Code § 75–02–04.1–09(2)(i). If the trial court determines this presumption has been rebutted, written findings or specific findings must be made on the record. N.D.C.C. § 14–09–09.7(3). As a matter of law, the trial court must clearly set forth how it arrived at the amount of net income and level of child support. *Berg v. Ullman ex rel. Ullman,* 1998 ND 74, ¶ 18, 576 N.W.2d 218. The party urging a deviation from the guideline amount bears the burden of proof. *Schleicher v. Schleicher,* 551 N.W.2d 766, 769 (N.D. 1996).

[¶ 18] Assessment of transportation costs against either party for facilitating visitation is a necessary incident to the issue of visitation rights. *Cook v. Eggers,* 1999 ND 97, ¶ 15, 593 N.W.2d 781. Consequently, in *Schmaltz v. Schmaltz,* 1998 ND 212, ¶¶ 13–14, 586 N.W.2d 852, we found no clear error when the trial court permitted a downward deviation from the child support guidelines because the noncustodial parent incurred $2,781 per year in visitation travel expenses. The parent resided a one-hour drive from the children's residence, and the trial court had ordered visitation three weekends per month. *Id.* at ¶¶ 7, 14. Similarly, in *Schiff v. Schiff,* 2000 ND 113, ¶ 33, 611 N.W.2d 191, we concluded a trial court's reduction of child support obligations due to visitation travel expenses was not clearly erroneous. The noncustodial parent presented evidence of travel expenses for visitation purposes averaging $1,450 per month. *Id.* The trial court reduced this amount by one-third because the noncustodial parent would personally benefit from these travel expenses. *Id. But see Carver v. Miller,* 1998 ND App 12, ¶ 21, 585 N.W.2d 139 (denying a downward deviation from the presumptively correct child support guidelines for a noncustodial parent who incurred visitation travel expenses); *Hendrickson v. Hendrickson,* 553 N.W.2d 215, 219 (N.D.1996) (refusing to allow a noncustodial parent credit on his child support obligation for

visitation travel expenses because he did not furnish sufficient facts to determine travel expenses and because of the increased needs of children over twelve).

## A

[¶ 19] Zich asserts she provided an affidavit to the trial court and her testimony at the hearing to rebut Tibor's affidavit anticipating $15,853 in visitation travel expenses. Zich also provided the trial court with copies of actual travel expenses incurred when the children visited Tibor during Christmas 1999. Thus, Zich claims the court erred in concluding Tibor presented "unrebutted evidence" of his projected travel expenses. Zich also claims the court erred in ordering Tibor to pay all travel expenses and then calculating the child support deviation on that basis, because nothing guarantees Tibor will make the five additional annual trips to Georgia that Tibor included in his anticipated expenses. Rather, Zich argues Tibor is guaranteed a windfall if he makes cheaper travel arrangements or does not exercise all his visitation rights.

[¶ 20] The trial court deviated from the presumptively correct child support guidelines, based on Tibor's projected visitation travel expenses, reasoning:

The preponderance of the evidence establishes that it would be in the childrens' [sic] interests to allow rebuttal of the child support obligation presumption. . . . The only way the parties are going to quit fighting is if there is nothing left to negotiate, arrange or discuss. [Tibor] has offered to pay all visitation expenses and make all travel arrangements. The evidence establishes that he will be unable to pay child support and the full amount of travel expenses. [Zich] suggests that a reduction in the obligation is not appropriate until after expenses have been incurred. This would lead to an unwieldy process by which there would have to be an annual hearing in which evidence of incurred expenses would be presented. Then, I

assume I would have to somehow give [Tibor] a rebate or credit for the expenditures.

 [¶ 21] We conclude the trial court properly found the presumptively correct child support guidelines were rebutted by a preponderance of the evidence establishing Tibor's reduced ability to provide support due to visitation travel expenses. *See* N.D.C.C. § 14–09–09.7(1)(d) (requiring the guidelines to specify circumstances to be considered in reducing support contributions on the basis of hardship). Although N.D. Admin. Code § 75–02–04.1–09(2)(i) allows a downward deviation from the presumptively correct child support guidelines when a preponderance of rebuttal evidence establishes a reduced ability to provide support due to visitation travel expenses and such deviation is in the best interest of the children, the rule does not provide guidance as to how extensive the noncustodial parent's reduced ability to pay child support must be. By contrast the guidelines have provided parameters defining reduced ability to pay child support in § 75–02–04.1–09(2)(k), pertaining to a downward deviation based on the noncustodial parent's health care expenses. Until § 75–02–04.1–09(2)(i) is clarified, we hold that Tibor carried his burden of proving his reduced ability to pay child support by his affidavit testifying as to his net income and projected travel expenses for purposes of visitation. Moreover, visitation with the noncustodial parent is presumed to be in the children's best interests. *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 21, 603 N.W.2d 896. Therefore, we affirm the trial court's approval of a downward deviation because Tibor met the two-part test to rebut the presumptively correct guidelines by establishing his reduced ability to pay child support and that his requested deviation is in the children's best interests.

[¶ 22] However, the trial court erred in granting Tibor a downward departure from his child support obligation based on discretionary visits. As Zich correctly argues, when the trial court reduced Tibor's child support payments based on his anticipated travel expenses for the discretionary visits, as well as the court-ordered visits, the trial court guarantees Tibor a windfall if he makes cheaper travel arrangements or does not actually make all five discretionary trips to visit the children.

[¶ 23] We addressed a similar issue regarding adjustment of child support for extended visitation in *Logan v. Bush*, 2000 ND 203, ¶ 25, 621 N.W.2d 314. Logan argued she was entitled to a reduction in her child support obligation because she has extended visitation with her children. *Id.* at ¶ 23; *see also* N.D. Admin. Code § 75–02–04.1–08.1 (providing a formula for calculating the child support obligation if a court order provides for extended visitation). The State argued the adjustment should not apply because Logan did not establish she had actually exercised extended visitation. *Logan*, at ¶ 26. We disagreed based on the express language of § 75–02–04.1–08.1, which considers only length of visitation "scheduled by court order," not the amount of visitation actually exercised. *Id.* We also noted the comments of the rule drafters indicating the mechanism for adjustment of child support, based only on extended visitation scheduled by court order, was designed to avoid repeated litigation or dispute over the amount of actual visitation. *Id.*

 [¶ 24] Guided by the express language of § 75–02–04.1–08.1, clearly proscribing adjustments to child support for extended visitation unless court-ordered, we hold the child support deviations allowed by § 75–02–04.1–09(2)(i), for visitation travel expenses, must be calculated on the basis of court-ordered visitations alone. Travel expense for discretionary visitation is not a valid criterion for rebuttal of the presumptively correct child support guidelines.

## B

[¶ 25] Zich contends the trial court erred in allowing a deviation based on Tibor's projected annual travel expenses of $11,372, when actual costs of three court-ordered visits would be $3,657. Zich claims the trial court erred in awarding Tibor a downward deviation without making specific findings regarding these travel expense calculations for several reasons: (1) the trial court used a ticket cost of $748 even though Zich testified ticket fares were $328 with advance notice or as low as $200 with travel coupons, and Tibor himself quoted average ticket prices below $450; (2) Tibor provided no evidence to substantiate doubling the airfare for summer visitation on his projected travel expenses; (3) because visitation alternates during spring break and Thanksgiving, expenses are only incurred for three yearly court-ordered visits; but the court neglected to reduce the Thanksgiving expenses by one-half; (4) the trial court included travel expenses for Tibor to make five annual trips to Georgia which were discretionary, not court-ordered; (5) the trial court allowed Tibor to include food expenses for himself and his wife on the five discretionary trips to Georgia; and (6) Tibor's net income from his financial affidavit included costs not allowable in calculating child support, such as two loans for litigation costs, as well as voluntary life insurance, retirement, and charitable contributions.

[¶ 26] The trial court reduced Tibor's child support obligation from $995 per month to $50 per month by crediting Tibor's anticipated visitation travel expenses. The trial court calculated this downward deviation from the child support guidelines as follows:

The unrebutted evidence presented at the hearing on December 6, 1999 is that the travel expenses would be approximately $15,853.50 per year. However, this amount is based on all the expenses being incurred every year. As it stands, the children will not be visiting every year at spring break. Therefore, one-

half of that amount, or $621, must be subtracted. Further, [Tibor] cannot be allowed a reduction for his wife's travel to Georgia. This amount is $3,740. I also do not think it appropriate to allow a reduction for a rental car while [Tibor] is in Georgia. This amount is $120. Therefore, [Tibor] is allowed a reduction of $11,372.50 for purposes of calculating his child support obligation.

[¶ 27] Although the trial court made specific findings regarding Tibor's reduced ability to pay child support due to visitation travel expenses, the trial court miscalculated the reduction allowed to Tibor for these travel expenses. Tibor projected $15,853.50 travel expenses, and the trial court properly subtracted half of the rotating spring break visits and properly deducted travel expenses for Tibor's wife and the rental car. *See Schiff v. Schiff,* 2000 ND 113, ¶ 33, 611 N.W.2d 191 (reducing by one-third the visitation travel expenses offered for a downward departure from the child support guidelines because the non-custodial parent would personally benefit from these travel expenses). However, the trial court failed to deduct half of the rotating Thanksgiving visits.

[¶ 28] The trial court accepted Tibor's projected airline ticket expenses as widely fluctuating between $745 per ticket during the summer compared to only $373.50 per ticket over Christmas; but in doing so, the trial court described Tibor's evidence as "unrebutted." The trial court failed to acknowledge Zich's evidence regarding the $373.50 per ticket Zich actually paid at Christmas 1999. When considering the appropriate reduction for travel expenses, the trial court will have an opportunity to consider evidence regarding the costs of travel which it apparently overlooked. Furthermore, all Tibor's travel expenses, including food, for his five projected discretionary visits to Georgia must be disallowed. Finally, Tibor's net income for the purpose of calculating child support payments may not include costs based on litigation loans, voluntary life in-

surance, retirement, and charitable contributions. *See* N.D. Admin. Code § 75–02–04.1–01(7) (defining net income as total gross annual income less tax obligations, health insurance and medical expenses for the children, union dues and occupational license fees, retirement contributions if deducted from the employee's compensation and to the extent required as a condition of employment, employment special equipment or clothing, and employer reimbursed out-of-pocket expenses). Therefore, we remand for the trial court to do the calculations.

[¶ 29] Section 75–02–04.1–09(2)(i), N.D. Admin. Code, does not provide guidance on the method of calculating a downward deviation from the child support guidelines based on visitation travel expenses. Section 75–02–04.1–09(2)(i) does not specify whether travel expenses should be deducted dollar-for-dollar from the child support payments, or whether the expenses should be subtracted from gross monthly income to arrive at the net income from which the guidelines calculate child support payments.

[¶ 30] Until § 75–02–04.1–09(2)(i) is amended to identify the method of deviation, the trial court may use its discretion to determine whether visitation travel expenses may be deducted directly from the child support obligation or from the non-custodial parent's gross monthly income to calculate net income. For guidance in its decision, the trial court may consider that we previously affirmed a trial court's deduction of children's medical expenses from the gross monthly income. *See Schumacher v. Schumacher,* 1999 ND 10, ¶ 6, 589 N.W.2d 185; *see also* N.D. Admin. Code § 75–02–04.1–01(7)(e) (authorizing a deduction from gross monthly income for payments made on actual medical expenses of the children). The court may also consider the increased needs of children age twelve and older. N.D. Admin. Code § 75–02–04.1–09(2)(e); *see also Hendrickson v. Hendrickson,* 553 N.W.2d 215, 219 (N.D.1996) (refusing to grant a deviation from the child support guidelines for visitation travel expenses due to the increased needs of the children over twelve and increased child care expenses).

## IV

[¶ 31] We affirm the judgment granting an extended summer visitation of seven weeks. We also affirm the trial court's finding that Tibor successfully rebutted the presumptively correct child support guidelines by a preponderance of the evidence establishing Tibor's reduced ability to pay child support due to visitation travel expenses. However, we reverse and remand for the trial court to recalculate the downward deviation from the guidelines, in accordance with this opinion.

[¶ 32] GERALD W. VANDE WALLE, C.J., concurs.

NEUMANN, Justice, concurring and dissenting.

[¶ 33] I agree with almost all of the majority opinion, with the exception of paragraphs 29 and 30 which allow a trial court to make a dollar-for-dollar deduction from the child support obligation rather than from the obligor's income in allowing for visitation expenses.

[¶ 34] I agree with the majority that N.D. Admin. Code § 75–02–04.1–09(2)(i) does not provide clear guidance for calculating a downward departure from the child support guidelines based on visitation travel expenses. However, I fear the majority's holding permitting a dollar-for-dollar setoff against an obligor's child support obligation, rather than an adjustment to the obligor's income, is an erroneous reading of the child support regulations, and one that will return to bedevil us in future cases.

[¶ 35] Subdivision (i) refers to "[t]he reduced ability of the obligor to provide support." Throughout the child support regulations, an obligor's ability to pay child support depends upon the obligor's income, with a few inapplicable exceptions.

I believe the reference to "[t]he reduced ability of the obligor to provide support" in subdivision (i) is a reference to a reduction in the obligor's income available from which to pay child support, and does not authorize a direct dollar-for-dollar decrease in the child support obligation itself. The legislative assembly has not provided, nor has this Court allowed, a dollar-for-dollar departure—upward or downward—for travel expenses, and I fail to see why we should start here. Rather, I believe travel expenses should be treated like medical expenses of the children. Under N.D. Admin. Code § 75–02–04.1–01(7)(e), the medical expenses of the children are deducted from the obligor's net income, rather than directly from the monthly child support obligation.

[¶ 36] Moreover, the majority opinion invites extension. If the language in subdivision (i) does permit a dollar-for-dollar decrease in the child support obligation, as the majority maintains, then the identical language in subdivisions (b), (g), and (h) referring to an "increased ability of an obligor ... to provide child support" authorizes a dollar-for-dollar increase in the child support obligation based on the increased value of the obligor's assets; the obligor's asset transactions; or a monthly income in excess of ten thousand dollars per month. Because of the dangerous path the majority opinion paves, I respectfully dissent.

[¶ 37] In my opinion, we should instruct the trial court to calculate the downward deviation from the child support guidelines by deducting the court-ordered travel expenses from Tibor's income, rather than directly from the child support obligations.

[¶ 38] MARY MUEHLEN MARING, J., concurs.

SANDSTROM, Justice, dissenting.

[¶ 39] Because the district court properly weighed the evidence and did not clearly err, I would affirm. To the extent the majority has substituted its judgment for that of the district court and has misapplied the law, I respectfully dissent.

I

[¶ 40] The majority properly sets forth our standard of review, but then does not apply it. In *Buchholz v. Buchholz*, 1999 ND 36, ¶ 11, 590 N.W.2d 215, we said:

Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review. A court errs as a matter of law when it fails to comply with the requirements of the Guidelines. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made." *Edwards v. Edwards*, 1997 ND 94, ¶ 4, 563 N.W.2d 394 (citing *Surerus v. Matuska*, 548 N.W.2d 384, 387 (N.D.1996)). When a district court *may* do something, it is generally a matter of discretion. *See City of Devils Lake v. Corrigan*, 1999 ND 16, ¶ 13, 589 N.W.2d 579. A district court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably. *Austin v. Towne*, 1997 ND 59, ¶ 8, 560 N.W.2d 895.

(Footnote omitted). Because the district court may have deviated from the Child Support Guidelines to accommodate visitation, and because the district court did not clearly err in doing so, its decision should be affirmed.

A

[¶ 41] The majority strips the district court of its discretion and incorrectly uses one law to interpret another. The majority, at ¶ 21, correctly concludes that once the presumptively correct Child Support Guidelines have been rebutted, the district

court may deviate from the guidelines to accommodate the children's best interests. *Schmaltz v. Schmaltz*, 1998 ND 212, ¶¶ 13–14, 586 N.W.2d 852. Then, at ¶ 22, the majority incorrectly concludes "the trial court erred in granting Tibor a downward departure from his child support obligation based on discretionary visits."

[¶ 42] Notwithstanding the best interests or rights of the children, and notwithstanding the extraordinary efforts of the district court to ensure a continued relationship between the father and his children, the majority concludes the "trial court erred in granting a downward departure from his child support obligation based on discretionary visits." I conclude the district court did not clearly err in allowing Tibor a deviation in child support to accommodate his children's visitation.

[¶ 43] The flaw in the majority's conclusion is evidenced by the rationale used to reach it. By considering a related, but wholly inapplicable, provision of the administrative code, the majority concludes deviation for travel expenses is applicable only to court-ordered visitation. The majority's paradigm is actually a paradox. At ¶¶ 22–24, the majority concludes that because N.D. Admin. Code § 75–02–04.1–08.1 (allowing adjustment of child support for periods of extended visitation) applies only to court-ordered visitation, N.D. Admin. Code § 75–02–04.1–09(2)(i) (establishing the criteria for rebuttal of child-support-guideline amount based on travel expenses for visitation) applies only to court-ordered visitation as well. Contrary to the majority analysis, the conspicuous absence of language in one provision, when that language is explicit in another provision, demonstrates its absence was intended.

[¶ 44] The majority invades the province of the legislature, which granted the rulemaking authority to the executive branch agency; the executive branch administrative agency, which has the rulemaking authority; and the district court, which under the statute and the adminis-

trative rule is entitled to deviate from the presumptively correct guidelines after finding the predicate facts.

[¶ 45] The majority violates the maxims of statutory construction, and contravenes clear administrative agency intent.

[¶ 46] Rules of statutory construction are applied to the interpretation of administrative rules. *See Gofor Oil, Inc. v. State*, 427 N.W.2d 104, 108 (N.D.1988). When a legislature or administrative agency places a particular provision in one place and omits it in another, it is presumed the provision does not apply where it is omitted. *See* 73 Am.Jur.2d, *Statutes* § 235:

> Where different language is used in different parts of a statute, it is to be presumed that the language is used with a different intent. Accordingly, the presence of a provision in one section of a statute and its absence from another effect an argument against reading it as implied by the section from which it is omitted.

(Footnotes omitted).

[¶ 47] This Court has explained:

> Generally, the law is what the Legislature says, not what is unsaid. The Bureau recognizes that "[t]here exists a principle of statutory interpretation that the mention of one thing implies the exclusion of another," citing *In Re Township 143 North, Range 55 West, Cass County*, 183 N.W.2d 520 (N.D. 1971). That is correct.

> It must be presumed that the Legislature intended all that it said, and that it said all that it intended to say. The Legislature must be presumed to have meant what it has plainly expressed. It must be presumed, also, that it made no mistake in expressing its purpose and intent. Where the language of a statute is plain and unambiguous, the "court cannot indulge in speculation as to the probable or possible qualifications which might have been in the mind of the legislature,

but the statute must be given effect according to its plain and obvious meaning, and cannot be extended beyond it."

*City of Dickinson v. Thress,* 69 N.D. 748, 290 N.W. 653, 657 (1940) (citations omitted).

*Little v. Tracy,* 497 N.W.2d 700, 705 (N.D. 1993).

[¶ 48] In addition, the rulemaking history reflects a specific intent *not* to treat visitation travel like costs of providing for children during periods of visitation:

> One commentor suggested that the provisions of subdivision i of subsection 2, which relates to the reduced ability of the obligor to provide support due to travel expenses incurred solely for the purpose of visiting a child who is the subject of the order, does not go far enough. The commentor suggested that some change be made to reflect the obligor's cost of providing for the children during periods of visitation. No change based upon this comment is recommended. No change was proposed for this subdivision. In addition, the department has previously rejected, as unduly complicated, other provisions intended to address the obligor's cost of providing for a child during periods of visitation. Those ideas have also been rejected because the visitation does not eliminate most of the obligee's costs of providing for the child as a custodial parent.

Summary of Comments Received in Regard to Proposed Amendments to N.D. Admin. Code Ch. 75–02–04.1, Child Support Guidelines, p. 21 (November 14, 1994) (prepared by Blaine L. Nordwall, Department of Human Services).

[¶ 49] Further, the history of the current framework of § 75–02–04.1–09 reflects no intention to impose the limitations grafted by the majority, while imposing other limitations not applied in other areas.

*75–02–04.1–09, Criteria for Rebuttal of Guideline Amount.* This section, formerly entitled "Factors Considered—Not Considered," would be amended in numerous respects. The most obvious change is in the title. Both title and structural changes to the section conform to amendments to N.D.C.C. § 14–09–09.7 made by the 1993 Legislative Assembly. Section 14–09–09.7(3) formerly provided that the presumption that the child support guidelines amount was correct is rebutted if a preponderance of the evidence established that "factors not considered by the guidelines" would result in an undue hardship for the obligor or the child. The 1993 amendment provided that the presumption may be rebutted if a preponderance of the evidence establishes, applying criteria which take into consideration the best interests of the child, that the child support amount established under the guidelines is not the correct amount of child support. In addition to the restructuring necessitated by this statutory change, each of the bases for deviation from the guidelines was analyzed to assure that it indeed reflects the best interests of the child.

Memorandum on Draft Amendments to Chapter 75–02–04.1, Child Support Guidelines, pp. 5–6 (February 3, 1994) (prepared by Blaine L. Nordwall, Department of Human Services).

[¶ 50] Once the predicate facts are established, as the majority concedes here, the amount of the reduction in child support under N.D. Admin. Code § 75–02–04.1–09 is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *K.L.G. v. S.L.N.,* 2001 ND 33, ¶ 9, 622 N.W.2d 232. The district court's findings are not clearly erroneous; the majority misinterprets and misapplies the law.

## B

[¶ 51] At ¶¶ 26–28, the majority charts a course of reweighing the evidence. At

¶ 26, the majority details the district court's reduction of proposed visitation expenses for Tibor's wife to accompany him and for rental car allowances and rotating spring breaks. Weighing the evidence is the province of the trial court. *State v. Syring*, 524 N.W.2d 97, 98 (N.D.1994) (citing *State v. Pollack*, 462 N.W.2d 119, 121 (N.D.1990)).

[¶ 52] At ¶ 28, the majority discounts Tibor's evidence and credits Zich's evidence, notwithstanding the district court's conclusion, noted at ¶ 26 of the majority opinion, that Zich failed to rebut the evidence proffered by Tibor. Because the district court received the evidence, weighed it, and credited the evidence proffered by Tibor, the majority's suggestion to the district court "to consider evidence regarding the costs of travel which it apparently overlooked" is useless. Further, at ¶ 28, the majority reiterates that Tibor's expenses related to discretionary visits must be disallowed. The semantics employed by the majority—classifying court-ordered visitation as discretionary—invades the province of the trial court.

[¶ 53] Even though the majority correctly notes, at ¶ 28, that the district court did not reduce travel expenses for alternating Thanksgiving visitation, I cannot conclude the district court's order is based on findings that are clearly erroneous.

## II

[¶ 54] Because the majority has invaded the province of the district court and reweighed the evidence, and violated basic tenets of statutory construction and separation of powers, I respectfully dissent.

[¶ 55] Dale V. Sandstrom.